**FLEMING FOODS OF TEXAS, INC., Petitioner,**

v.

Carole Keeton RYLANDER, Comptroller of Public Accounts of the State of Texas and John Cornyn, Attorney General of the State of Texas, Respondents.

No. 97–1044.

Supreme Court of Texas.

Argued Nov. 18, 1998.

Decided Dec. 9, 1999.

J. Scott Morris, Austin, for Petitioner.

William E. Storie, Dan Morales, David A. Talbot, Jr., Lucinda Gover, Esteban H. Rodriguez, Austin, for Respondents.

Justice OWEN delivered the opinion of the Court.

The opinion issued June 10, 1999, is withdrawn, and the following opinion is substituted in its place:

The issue in this case is whether a taxpayer who pays sales tax to a vendor rather than directly to the State may request a tax refund from the State without receiving an assignment of refund rights from the vendor. We hold that sections 111.104, 111.107, and 111.203 of the Texas Tax Code permit an indirect taxpayer to pursue refunds without first obtaining an assignment from the vendor who collected and remitted the tax. Accordingly, we reverse the judgment of the court of appeals and remand this case to the trial court for further proceedings.

## I

Fleming Foods, a wholesale grocer, purchased products and commodities from more than a dozen vendors and paid sales taxes to those vendors, who in turn remitted the taxes to the State. Beginning in 1989, the Texas Comptroller of Public Accounts audited Fleming for possible sales and use tax deficiencies. As part of that audit process, Fleming and the Comptroller entered into a series of agreements that extended the four-year limitations periods for the assessment of taxes, penalties, and interest. Each extension also specifically provided: "This agreement entitles the taxpayer to credits or refunds for the report periods that are extended." None of Fleming's vendors joined in the extension agreements between Fleming and the Comptroller, but Fleming obtained assignments of refund rights from its vendors. However, in some cases, vendors did not execute the assignments until more than four years had elapsed since Fleming paid the tax, and in other cases, assignments were made to Fleming after its extension agreements with the Comptroller had expired.

The Comptroller ultimately assessed a deficiency of $353,996.57 against Fleming for sales and use taxes. Fleming requested a redetermination hearing and filed for refunds, contending that it had erroneously paid sales taxes on exempt packing materials over several years. The Comptroller agreed that Fleming was entitled to refunds for certain periods of time but denied claims for others on the basis that they were barred by the Tax Code's four-year statute of limitations. The Comptroller maintained that Fleming's refund rights were wholly derivative of its vendors' rights and that the Tax Code did not permit Fleming, as an indirect taxpayer, to obtain refunds from the State unless vendors timely assigned refund rights.

Fleming paid the tax deficiency under protest and sued in district court, challenging the Comptroller's decision that the disputed refund claims were time-barred. Following a bench trial, the trial court rendered a take-nothing judgment against Fleming. The court of appeals affirmed. 951 S.W.2d 278. It concluded that although the clear language of section 111.104 of the Tax Code would allow indirect taxpayers to file for refunds from the State, the statute's legislative history indicated that this was to be only a codification and that no substantive change was intended. The court of appeals then looked to the predecessor of section 111.104, which included former article 1.11A(3), and concluded that because article 1.11A(3) indicated that only direct taxpayers could file for refunds, section 111.104 of the Tax Code should be construed to say the same thing.

Fleming filed a petition for review with this Court,[1] contending that (1) the courts below erred by holding that Fleming had no right to file for refunds from the State, (2) Fleming's legal expert should have been permitted to testify, and (3) Fleming should prevail on a detrimental reliance theory. Because of our disposition of the first issue, we do not reach the other questions presented for review.

## II

As already indicated, the Comptroller's position is that the Tax Code only permits taxpayers who pay sales taxes directly to the State to file for refunds. The Comptroller contends that Fleming should have sought a refund from its vendors or that Fleming should have obtained assignments of refund rights from its vendors on a timely basis and then proceeded to request refunds from the State as an assignee.

The assignments to Fleming from vendors fall into three categories: (1) assignments made less than four years after the

sales to Fleming occurred, (2) assignments made more than four years after the sales to Fleming but within the limitations period as extended by the agreements with the Comptroller, and (3) assignments made more than four years after the sales to Fleming and after the expiration of the extended limitations periods, but within six months after the deficiency determination became final. The Comptroller does not dispute that the assignments in the first category permitted Fleming to seek refunds, and the Comptroller has in fact made refunds with respect to those assignments. The State takes issue with the last two categories of assignments. The State contends that the refund rights of Fleming's vendors were barred by limitations at the time of the assignments and that the extension agreements cannot revive those barred claims since Fleming, as assignee, took the assignments subject to all defenses the State would have.

Fleming contends that none of the assignments were necessary because the Tax Code permits taxpayers, including indirect taxpayers, to seek refunds from the State. If that is so, then the extension agreements between Fleming and the Comptroller were effective to extend the time within which Fleming could file for refunds, and none of Fleming's refund claims are barred by limitations.

The resolution of this case turns on the proper construction of the Tax Code and who may file with the State for refunds. The express language of the Code supports Fleming's position, as the court of appeals observed. *See* 951 S.W.2d at 281. Section 111.104 clearly and unambiguously allows Fleming to file for refunds of sales taxes even though the tax was collected by a vendor rather than paid directly to the State. Section 111.104 says that "[a] tax refund claim may be filed with the comptroller by the person who paid the tax."

---

1.  During the pendency of Fleming's appeal before this Court, Carole Keeton Rylander

succeeded John Sharp as Texas Comptroller.

TEX. TAX CODE § 111.104(b). There is no question that Fleming is the "person who paid the tax." The Tax Code contemplates that vendors collect the tax from taxpayers such as Fleming and that the vendors hold those taxes in trust for the benefit of the State until they are remitted to the State. *See id.* § 111.016. Section 111.104 of the Tax Code also says that if a tax has been unlawfully or erroneously collected, then the Comptroller shall make a refund to "the taxpayer." *Id.* § 111.104(a). The term "taxpayer" is defined by the Code as "a person liable for a tax imposed by this title." *Id.* § 101.003(8). Again, there is no question that Fleming is a person liable for sales taxes imposed by the Tax Code. And section 111.104, which directs the Comptroller to make refunds to the taxpayer, expressly applies "to all taxes and license fees collected or administered by the comptroller," with certain exceptions that are not relevant here. *Id.* § 111.104(e). The sales taxes paid by Fleming are taxes administered by the Comptroller.

Another section of the Tax Code also indicates that a taxpayer such as Fleming may file for a refund from the State. Section 111.107 says that "[a] person may request a refund or a credit or the comptroller may make a refund or issue a credit for the overpayment of a tax imposed by this title at any time before the expiration of the period during which the comptroller may assess a deficiency for the tax." *Id.* 111.107(a). Fleming is "a person" under the Tax Code. *See id.* § 111.104(f) (recognizing that a taxpayer such as Fleming is a "person" from whom another "person," such as one of Fleming's vendors, collects taxes).

The court of appeals held, however, that the clear, unambiguous language of these statutes was rendered uncertain by their legislative history. 951 S.W.2d at 281. The statute that preceded Tax Code section 111.104, former article 1.11A,[2] provided that a refund claim could be filed by any person who paid sales taxes "directly to the state."[3] The codification of former article 1.11A was part of the Legislature's ongoing codification of our statutes. The 1981 enactment that resulted in section 111.104 stated that "[t]his Act is intended as a recodification only, and no substantive change in the law is intended by this Act."[4] The court of appeals accordingly concluded that, notwithstanding what it thought was clear language in the Tax Code that allowed Fleming to seek a refund, the former statute governed. 951 S.W.2d at 282. The court of appeals held that because Fleming did not pay taxes "directly to the state," it did not have standing to seek a refund. *Id.*

The court of appeals was also swayed by one of the Comptroller's regulations. *See id.* at 281. When former article 1.11A was still in effect, the Comptroller promulgated rules based on the language in article 1.11A(3) that said that any person who paid sales taxes "directly to the state" could file for a refund. *See* 34 TEX. ADMIN. CODE § 3.325. Section 3.325(b) of the Comptroller's rules provided that a person who paid tax to a seller rather than directly to the State could not request a refund from the Comptroller but must recover the tax from the seller.[5] Section 3.325(b) remained substantially unchanged after the

2. Act of Apr. 5, 1979, 66th Leg., R.S., ch. 59, § 1, art. 1.11A(1), 1979 Tex. Gen. Laws 96, 96, *repealed by* Act of May 29, 1981, 67th Leg., R.S., ch. 389, § 39, 1981 Tex. Gen. Laws 1490, 1785 [hereinafter former article 1.11A].

3. *Id.*

4. Act of May 29, 1981, 67th Leg., R.S., ch. 389, § 40, 1981 Tex. Gen. Laws 1490, 1787.

5. The Comptroller's administrative rules provide in part:

(b) Tax paid to seller. A person who remits tax to a seller rather than directly to the state may not request from the comptroller a refund of any tax which that person has remitted to a seller but contends was not due. The tax must be recovered from the seller.

34 TEX. ADMIN. CODE § 3.325(b).

enactment of section 111.104 of the Tax Code.

The court of appeals concluded that the doctrine of legislative acceptance applies to section 111.104 because the Comptroller had construed former article 1.11A by promulgating section 3.325(b) of its administrative rules and because the Legislature subsequently amended article 1.11A many times without changing the law with regard to who had standing to seek a refund from the State. *See* 951 S.W.2d at 281–82. This series of events indicated to the court of appeals that the Legislature had accepted the Comptroller's interpretation of former article 1.11A. *Id.* The court of appeals observed in a footnote that the Legislature has amended section 111.104 since 1981 but has not addressed the issue of who may file for a refund from the State. *See* 951 S.W.2d at 282 & n. 5.

■ The doctrine of legislative acceptance contemplates that " '[a] statute of doubtful meaning that has been construed by the proper administrative officers, when re-enacted without any substantial change in verbiage, will ordinarily receive the same construction.' " *Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 248 (Tex.1991) (alteration in original) (quoting *Humble Oil & Ref. Co. v. Calvert,* 414 S.W.2d 172, 180 (Tex.1967)). We note at the outset that there is an internal conflict within the Comptroller's current administrative rules. Although section 3.325(b) says that indirect taxpayers should seek refunds from their vendors and not the State, another section of the Comptroller's rules now closely tracks section 111.104 of the Tax Code. Section 1.5(c) of the Comptroller's rules provides that "a taxpayer may request a refund" within the time provided by section 111.104(c) of the Tax Code and is entitled to a hearing. 34 TEX. ADMIN. CODE § 1.5(c). As we have seen, the Tax Code defines "taxpayer" as one who is liable for the tax, and that would include indirect taxpayers.

But aside from the Comptroller's conflicting administrative rules, the doctrine of legislative acceptance does not apply to section 111.104 of the Tax Code because when former article 1.11A(3) was codified in section 111.104, there was a substantial change in verbiage. The language used in section 111.104 is notably different from the language of 1.11A(3). The words "directly to the state" do not appear in section 111.104. Nor does the concept of payment directly to the State appear in section 111.104. To the contrary, section 111.104 says that "[a] tax refund claim may be filed with the comptroller by the person who paid the tax," TEX. TAX CODE § 111.104(b), and that the Comptroller must refund overcollections to "the taxpayer from whom the amount was collected," *id.* § 111.104(a).

■ Another element of the legislative acceptance doctrine is that the statute at issue must be ambiguous. *See Calvert,* 414 S.W.2d at 180. Under the doctrine of legislative acceptance, an administrative agency's construction of a statute cannot contradict the statute's plain meaning. Moreover, the Tax Code expressly provides that the Comptroller is only authorized to promulgate rules that do not conflict with the tax statutes. *See* TEX. TAX CODE § 111.002. And we have held that an agency's construction of a statute may be considered only if it is reasonable and not inconsistent with the statute. *See Tarrant Appraisal Dist. v. Moore,* 845 S.W.2d 820, 823 (Tex.1993). Section 3.325(b) of the Comptroller's regulations directly contradicts the plain meaning of section 111.104 to the extent that the statute generically allows taxpayers to seek refunds but the regulation allows only direct taxpayers to seek refunds. The doctrine of legislative acceptance does not apply here, and the Comptroller's interpretation of sections 111.104 and 111.107 is not entitled to any deference.

We next consider the Comptroller's contention that we must give full effect to the Legislature's stated intent that its re-codification of former statutes as portions of

the current Tax Code would leave existing law unchanged.

## III

For more than thirty years, our statutes have undergone a continuing process of codification and in some instances recodification. In 1963, the Legislature charged the Texas Legislative Council with the task of planning and executing a permanent statutory revision program to "clarify and simplify the statutes and to make the statutes more accessible, understandable, and usable." TEX. GOV'T CODE § 323.007(a). The Legislature directed, however, that "the council may not alter the sense, meaning, or effect of [a] statute." *Id.* § 323.007(b).

In promulgating the Tax Code, the Legislature said that "[t]his Act is intended as a recodification only, and no substantive change in the law is intended by this Act."[6] Section 101.001 of the Code also states that Title 2, which includes sections 111.104 and 111.107, was "enacted as a part of the state's continuing statutory revision program, begun by the Texas Legislative Council in 1963 ... [and] contemplates a topic-by-topic revision of the state's general and permanent statute law without substantive change." TEX. TAX CODE § 101.001(a). Other objectives stated in the Tax Code were to make our tax laws more accessible and understandable and to restate the law "in modern American English to the greatest extent possible." *Id.* § 101.001(b).

Notwithstanding the Legislature's stated intent and its directives to the Legislative Council, sections 111.104 and 111.107 of the Tax Code would be a change in the prior law if given effect as they are written. As we have seen, the statute that generally governed refunds of sales and use taxes prior to the codification of the Tax Code was former article 1.11A.[7] Under former article 1.11A and one of the Comp-

troller's longstanding regulations under it, Fleming would not have been authorized to file for a refund because it did not pay taxes "directly to the state." *See id.;* 4 TEX. REG. 1105 (1979) (amended 1982, 1984, 1987) (current version at 34 TEX. ADMIN. CODE § 3.325(b) (1998)). In contrast, section 111.104 omits the phrase "directly to the state" and says that a claim for refund may be filed by "the person who paid the tax." TEX. TAX CODE § 111.104(b). Section 111.107 likewise says that "[a] person may request a refund" within certain time limits. *Id.* § 111.107(a). And, "[a] person claiming a refund under Section 111.104 of this code is entitled to a hearing on the claim." *Id.* § 111.105. The concept that the person who paid the tax may file for a refund is thus expressly set forth in the Tax Code, and that concept is not confined to just one section of the Code that might be read out of context. The Code, as a whole, says that a person, which includes an indirect taxpayer, may file for a refund. Unlike the recodification at issue in *Jones v. Fowler,* 969 S.W.2d 429 (Tex.1998), in which we held that the words "six months preceding" had the same meaning as the prior law that said "six months immediately preceding," the changes in wording in the Tax Code at issue in this case would be a substantive departure from prior law.

We are thus faced with a difficult issue. What effect should be given to clear, unambiguous statutes that were drafted by the Legislative Council as part of the codification process but that depart from prior law? Under the Code Construction Act, *see* TEX. GOV'T CODE §§ 311.001–.032, which applies to the Tax Code, *see* TEX. TAX CODE § 101.002, courts may consider prior law, the circumstances under which the law was enacted, and legislative history among other matters to aid them in construing a code provision "whether or not the statute is considered ambiguous on its face," TEX. GOV'T CODE

---

6. Act of May 29, 1981, 67th Leg., R.S., ch. 389, § 40, 1981 Tex. Gen. Laws 1490, 1787.

7. *See* former article 1.11A, *supra* note 2.

§ 311.023. But prior law and legislative history cannot be used to alter or disregard the express terms of a code provision when its meaning is clear from the code when considered in its entirety, unless there is an error such as a typographical one. Nor can the Code Construction Act's directive to the Legislative Council to refrain from changing the sense, meaning, or effect of a previous statute, *see id.* § 323.007(b), be used as a basis to alter the express terms of a code that the Legislature enacts as law, even when the Council's language does change the prior, repealed law.

■■ It is a cardinal rule of statutory construction that we are to give effect to the intent of the Legislature. *See Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 438 (Tex.1997). But general statements by the Legislature in enacting the Tax Code that "no substantive change in the law is intended" [8] must be considered with the clear, specific language used in sections 111.104 and 111.107. To the extent that these latter sections of the Tax Code do change prior law, the specific import of their words as written must be given effect. These specific, unambiguous statutes are the current law and should not be construed by a court to mean something other than the plain words say unless there is an obvious error such as a typographical one that resulted in the omission of a word, *see City of Amarillo v. Martin,* 971 S.W.2d 426, 428 n. 1 (Tex.1998), or application of the literal language of a legislative enactment would produce an absurd result, *see id.* (citing *Bridgestone/Firestone, Inc. v. Glyn–Jones,* 878 S.W.2d 132, 135 (Tex.1994) (Hecht, J., concurring)).

In adopting sections 111.104 and 111.107 of the Tax Code, the Legislature expressly repealed article 1.11A. The former statute ceased to exist. This Court had occasion to consider the effect of a codification on prior law in *American Indemnity Co. v. City of Austin,* 112 Tex. 239, 246 S.W. 1019 (1922), although in a somewhat different context. In *American Indemnity,* a prior law was unconstitutional because the caption of the bill enacting it did not include an adequate description. *See id.* at 1021. In holding that a subsequent re-enactment of the same provision supplanted the prior, unconstitutional law and that the subsequent enactment was constitutional, the Court observed that the new law, not the old, governs:

> [T]he general rule ... is that such Codes are not mere compilations of laws previously existing, but bodies of laws so enacted that laws previously existing and omitted therefrom cease to exist, and such additions as appear therein are the law from the approval of the act adopting the Code.

246 S.W. at 1024.

Chief Justice Cureton, writing for the Court in *American Indemnity,* explained that the citizens of Texas must be able to look with confidence to existing law as written. He concluded that the contention that the prior law should control "is not to be seriously considered." *Id.* at 1025. "The law to be just and effective must be accessible and certain." *Id.*

Amici, who are ten members of the 79th Legislature, argue that when a mistake is made and a substantive change occurs in the codification process even though no substantive change was intended by the Legislature, the old law should apply. Otherwise, amici contend, the entire nonsubstantive recodification program will be impaired. Although we are sympathetic to these concerns, we respectfully disagree with the conclusion that the recodification program will be jeopardized if courts construe clear, unambiguous code provisions as they are written. Far more harm would occur if we were to hold that prior, repealed law overrides a subsequent, unambiguous codification. Such a holding would mean that no provision in a codification that supersedes prior law, no matter

---

**8.** Act of May 29, 1981, 67th Leg., R.S., ch. 389, § 40, 1981 Tex. Gen. Laws 1490, 1787.

how clear the new law, could be relied upon by the citizens of Texas. Anyone wanting to know what the law of Texas required would have to consult not only the existing law, but the former, repealed law and then compare the new with the old. That would be a tremendous disservice to the citizens of this State, as so eloquently explained in *American Indemnity* in an analogous context:

> To say that the citizen, in order to know the law by which his rights are to be determined, must go through the many volumes of session laws ... and examine the original acts, including the captions and repealing acts and clauses, is not to be seriously considered.... The session laws are for all practical purposes inaccessible to the average citizen, and the task of searching through them to ascertain the law an insurmountable one.... And yet, unless the Revised Statutes constitute the law—are the law—citizens and courts alike will be compelled to seek it in the Session Acts of the Legislature.
>
> But the Revised Statutes, as we have seen, are the law, and are to be looked to with safety and confidence by the citizen.... The Revised Statutes of this state, when once adopted, become the entire law on the subjects they purport to cover....

*Id.* at 1025. The authors of the interpretive commentary to Article III, Section 43 of our Texas Constitution cite *American Indemnity,* and paraphrasing the foregoing passage, say: "When adopted, the provisions of the revision become the entire law on the subjects they purport to cover, unless specifically excepted, and are to be looked to with safety and confidence by the citizen."

As already noted, the Legislature did not except former article 1.11A from repeal and replacement by provisions of the Tax Code. Although the Legislature stated that no substantive change was intended, it did not leave article 1.11A in place and direct that if the Code conflicted, then article 1.11A governed. The current law of Texas on the matters formerly governed by article 1.11A is the Tax Code, including the clear and unambiguous provisions of sections 111.104 and 111.107. Citizens, lawyers who represent them, judges, and members of the Legislature should not be required to research the law that preceded every codification to determine if there had been some change and accordingly whether the prior law rather than the current law prevails. We must be able to accept and to rely upon the words written by the Legislature if they are clear and unambiguous, their meaning is plain when the code in which they appear is read in its entirety, and they do not lead to absurd results.

We note that the Legislature itself appears to have relied on the plain meaning of section 111.104, and not the prior law, when it enacted a substantive amendment to the Tax Code in 1983 that was *not* part of the codification process. After the 1981 codification of the Tax Code, the Legislature amended section 111.203 and for the first time allowed "a taxpayer" (defined in the Code as "a person liable for a tax," TEX. TAX CODE § 101.003(8)) and the Comptroller to agree not only to extensions of time for assessing a tax but also to extensions of time for filing for *refunds.*[9] There was no comparable provision for refunds in former article 1.045,[10] the predecessor of

---

9. Section 111.203 provides:
   Before the expiration of the periods prescribed in Section[ ] 111.104 ... of this code for the filing of a refund claim or for the assessment and collection of any tax imposed by this title, the comptroller and a taxpayer may agree in writing to the filing of a refund claim or to an assessment and collection after that time.

TEX. TAX CODE § 111.203(a).

10. Act of Apr. 16, 1981, 67th Leg., R.S., ch. 102, § 6, 1981 Tex. Gen. Laws 235, 241, *repealed by* Act of May 29, 1981, 67th Leg., R.S., ch. 389, § 39, 1981 Tex. Gen. Laws 1490, 1785.

section 111.203. The substantive amendment to section 111.203 in 1983 dovetailed with the express provisions of the 1981 codification that resulted in sections 111.104 and 111.107, which allowed the person who paid the tax, albeit indirectly, to file for refunds. The 1983 amendment would be at odds with former section 1.11A if that repealed law, rather than sections 111.104 and 111.107, were to govern, since former section 1.11A did not allow an indirect taxpayer to request a refund from the Comptroller.

We are compelled to conclude that when, as here, specific provisions of a "nonsubstantive" codification and the code as a whole are direct, unambiguous, and cannot be reconciled with prior law, the codification rather than the prior, repealed statute must be given effect. *See State Farm Mut. Auto. Ins. Co. v. Major*, 239 Va. 375, 389 S.E.2d 307, 309 (1990) (holding that the deletion of a word during recodification plainly indicated the legislature's intent to alter the substantive meaning of the code provision); *Roy v. Williams*, 382 A.2d 1351, 1354 (Del.1978) (enforcing a code provision as the positive law of the state because the codification process is more than a mere reorganization of existing laws that conform to the substance of their predecessors). In the final analysis, it is the Legislature that adopts codifications, not the Legislative Council, and it is the Legislature that specifically repeals prior enactments. The codifications enacted by the Legislature are the law of this State, not the prior, repealed law. When there is no room to interpret or construe the current law as embodying the old, we must give full effect to the current law. General statements of the Legislature's intent cannot revive repealed statutes or override the clear meaning of a new, more specific statute. The Tax Code allows Fleming to file for refunds from the State, and that right should be enforced as it was written.

We recognize that in reaching its decision, the court of appeals may have been attempting to give effect to language in one of our decisions indicating that the former law should trump a codification when the codification says that it is intended to be nonsubstantive. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653 (Tex. 1989) (per curiam). We said in *Johnson* that "[w]hen a conflict exists between a former statute and a revision made pursuant to the legislature's directive to the Texas Legislative Council to make a nonsubstantive revision of the statutory law, the former statute will control." *Id.* at 654–55. However, that was not the basis for our holding in *Johnson*. We said in the same paragraph that "we hold that no substantive changes were in fact made." *Id.* at 655. We accordingly were not called upon to decide whether the old law controlled over the new. That issue is squarely presented in this case, and upon plenary consideration of the issue, we can only conclude that the current Tax Code must be construed as it is written. It is imperative that the citizens of this State be able to rely on the plain meaning of our laws to determine their rights and responsibilities.

In *PRC Kentron, Inc. v. First City Center Associates, II*, 762 S.W.2d 279 (Tex. App.—Dallas 1988, writ denied), the court of appeals was called upon to construe a code provision that was part of the codification process. *See id.* at 285. Although the court of appeals noted that it was the express intent of the Legislature not to change prior law and that the Legislature had restricted the Legislative Council's authority to make substantive changes, the court of appeals recognized the possibility that the old law may have to give way to the new in some circumstances:

> We do not hold that every recodified statute can never be more or less than its predecessor, or that the construction of the former provision always controls the latter. We acknowledge, as Tenant reminds us, that the ordinary citizen ought to be able to determine his rights and responsibilities under a statute from

the text itself without resort to the much less readily accessible session laws.

*Id.* at 286 (citation omitted).

At least two of our courts of appeals had indicated that if a codification changes prior law, the prior law should govern. *See Minton v. Perez,* 783 S.W.2d 803, 805 (Tex. App.—San Antonio 1990, orig. proceeding); *Bryant v. Metropolitan Transit Authority,* 722 S.W.2d 738 (Tex.App.—Houston [14th Dist.] 1986, no writ). However, neither of those cases concerned unambiguous code provisions that could not be reasonably interpreted to mean the same thing as the prior law. In *Bryant,* the court of appeals said that a statute enacted as part of the codification process is not controlling even if it is "clear on its face" when a change in law would result. *Id.* at 740. But in that case, the court of appeals found the codification to be ambiguous. *Id.* In *Minton,* the court of appeals stated in *dicta* that a former statute will control a conflicting codification. *See Minton,* 783 S.W.2d at 805; *see also In re Fernandez,* 855 F.2d 218, 219–20 & n. 12 (5th Cir.1988)(following *Bryant* and holding that the prior law governed); *City of Murphy v. City of Parker,* 932 S.W.2d 479, 483–84 (Tex.1996)(Gonzalez, J., dissenting). To the extent that *Bryant* and *Minton* conflict with our holding today, we disapprove of those decisions.

## IV

There is no dispute that if, as we have concluded, the Tax Code permits Fleming to seek refunds from the State in its own right and not as an assignee of its vendors, the requests for refunds made by Fleming were timely. The agreements it reached with the Comptroller expressly extended both the time within which the Comptroller could assess deficiencies and the time within which Fleming could file refunds. The Tax Code provides this same mutuality. *See* Tex. Tax Code § 111.107 (allowing refunds to be filed at any time before the expiration of the period during which the comptroller may assess a deficiency); *see*

*also Borden, Inc. v. Sharp,* 888 S.W.2d 614, 618–20 (Tex.App.—Austin 1994, writ denied). The Tax Code further extends the time within which a taxpayer may present claims for refunds up to six months after a deficiency determination becomes final. *See* Tex. Tax Code § 111.104(c)(3); *see also id.* § 151.505 (explaining that a determination "becomes final on the expiration of 30 days after the day on which the determination was served by personal service or by mail"). The parties do not dispute that all of Fleming's claims were filed within these time frames.

Because the trial court concluded that Fleming's claims were time-barred, it did not resolve the merits of Fleming's claims for refunds. Those issues should be determined by the trial court.

\* \* \* \* \*

Because we hold that the Tax Code permits an indirect taxpayer such as Fleming to seek refunds of sales taxes from the State, we reverse the judgment of the court of appeals and remand this case to the trial court for further proceedings consistent with this opinion.