# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============
## NO. 03-00-00071-CV
===============


**Mary Ann Chambers, f/d/b/a Today's Signs, Appellant**

**v.**

**State of Texas and City of Denton, Texas, Appellees**


========================================================================
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. 96-07787, HONORABLE MARGARET COOPER, JUDGE PRESIDING
========================================================================


The State of Texas and the City of Denton, Texas ("the State"), sued appellant Mary Ann Chambers f/d/b/a Today's Signs to recover delinquent sales taxes. Following a nonjury trial, the trial court rendered judgment that the State recover $96,703.37 in sales tax, penalty, and interest. At Chambers's request, the court filed findings of fact and conclusions of law. We will affirm the trial court's judgment.

Chambers, a sole proprietor, did business making and selling signs under the name Today's Signs. Today's Signs was in operation until March 1996. In 1994, the comptroller audited Today's Signs for sales tax compliance from 1990 through 1993 and issued a notice of tax due. Following the audit, Today's Signs continued to accrue unpaid sales taxes, for which the comptroller assessed a deficiency. Although the total liability period of Today's Signs extends from January 1990 through February 1996, the portion of the tax that Chambers contests on appeal relates only to the period audited by the comptroller.

In her first issue, Chambers contends that the trial court erred in determining that she is liable for tax on out-of-state sales. Chambers maintains that a tax on out-of-state sales unconstitutionally burdens interstate commerce. It is clear that taxing out-of-state sales is unconstitutional. *Bullock v. Lone Star Gas Co.*, 567 S.W.2d 493, 497 (Tex. 1978); *see* Tex. Tax Code Ann. § 151.051(a) (West 1992). The record does not show, however, that the trial court imposed such a tax. Rather, the judgment can be supported on the ground that Chambers erroneously collected out-of-state sales tax without showing she was entitled to a refund. We discuss this ground below.

A vendor such as Chambers who collects money represented to be a tax from a customer holds the amount collected in trust for the benefit of the State and is liable to the State for the full amount collected. Tax Code § 111.016(a) (West Supp. 2001);[1] *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 281 (Tex. 1999). If the vendor has erroneously collected taxes from a customer, the vendor may seek a refund from the comptroller, but only after reimbursing the customer for all taxes collected. § 111.104(f).[2] Moreover, the customer, as a person from whom the vendor erroneously collected the tax without reimbursement, can also seek a refund from the comptroller. § 111.104(a), (b); *Fleming Foods*, 6 S.W.3d at 280-81. This scheme applies without doubt to taxes erroneously collected on out-of-state sales and repudiates Chambers's argument that section 111.016(a) unconstitutionally taxes such sales. Rather, these

---

[1]    Although the prior version of section 111.016 governs this case, the 1995 amendment is irrelevant here and we cite the current version for convenience.

[2]    Although the prior version of section 111.104 controls, the 1999 amendment is irrelevant to this cause.

sections require a vendor who does not reimburse her customer to remit erroneously collected taxes to the State, from which the customer may ultimately obtain a refund.

Chambers testified that during the time subject to the audit, she collected tax on sales to an out-of-state customer, United States Tobacco Company. The evidence shows that from March 31, 1990, through the end of December 1993, Chambers collected $20,384.09 in tax on these sales. This amount forms part of the deficiency the State sued to collect.

In a suit to collect sales taxes, the comptroller's certificate showing a delinquency is prima facie proof of the amount of tax due after all lawful credits have been allowed. § 111.013(a) (West 1992). The comptroller's delinquency certificate was admitted in evidence in this case and showed that Chambers owed the State sales taxes of $96,703.37. The presumption of validity accorded the comptroller's certificate shifted the burden to Chambers to show by competent evidence that the assessment was illegal and excessive. *Smith v. State*, 418 S.W.2d 893, 896 (Tex. Civ. App.—Austin 1967, no writ).

Chambers argues that she proved as a matter of law that she refunded the out-of-state sales tax to U.S. Tobacco. She contends that during the audit of Today's Signs, the auditor found that she had fully reimbursed U.S. Tobacco and that he credited the amount of out-of-state sales tax against the remainder of tax due. The trial court found that Chambers had received credit for all offsets to which she was entitled. To resolve Chambers's matter-of-law contention, we first examine the evidence supporting the court's finding, ignoring any contrary evidence. If no evidence supports the finding, we then examine the entire record to see if the contrary proposition is established as a matter of law. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982).

3

Mary Hawkins, an auditor for the comptroller, testified for the State. Although Hawkins did not audit Chambers's business herself, she had reviewed the documents prepared by the person who performed the audit, Robert Palla. Hawkins described a document titled "Adjustments to Taxable Sales - Credits" that Palla had prepared for Chambers during the audit. In this document, Palla itemized Chambers's out-of-state sales to U.S. Tobacco and calculated $20,384.09 as the total sales tax that Chambers had billed and collected. A footnote relating to each sale states, "Items shipped to US Tobacco OOS [out-of-state] locations. The tax was refunded to the customer." Near the bottom of the document, in a section called "Comments," Palla wrote, "This exam is to give credit for tax collected in error." The document is dated April 8, 1994.[3]

Hawkins testified that the audit package prepared by Palla contained all the adjustments made in the audit and that the document itemizing sales to U.S. Tobacco was not part of the audit. It was instead prepared on the date of the exit conference with Chambers and appeared to be information showing her how the audit could be amended if she refunded the erroneously collected tax. In a report Palla submitted as part of the audit documents, Palla noted that he had informed Chambers that credit would be allowed in the audit only after he could verify that the taxes paid in error had been refunded to the customer. The audit package indicated to Hawkins that Chambers had presented no documentation to show Palla that she had in fact refunded the money to U.S. Tobacco.

---

[3] Although Chambers characterizes Palla's statements in the document as an admission, the testimony contradicting the effect of the statements negates their use as an admission. *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989).

Chambers testified that Palla gave her the document itemizing sales to U.S. Tobacco. Palla told her that she needed to refund $20,384.09 to the customer and that once she refunded the money, she would receive a credit from the comptroller. After the audit, Chambers issued U.S. Tobacco a credit of $20,384.09 to use against future sales. Chambers stated that U.S. Tobacco drew down the credit over the course of the following year. An invoice of Today's Signs showing a credit to U.S. Tobacco of $20,384.09, without identifying the reason for the credit, was admitted in evidence and is dated October 5, 1994. This date follows by a significant time April 8, 1994, the date of Palla's document. Chambers testified that once the audit was completed, she never requested a rehearing of the audit or of any returns that she had filed.

Hawkins's and Chambers's testimony provides evidence that Chambers failed to show during the audit that she had made reimbursement and failed to ask the comptroller for a redetermination of the audit afterward. Therefore, despite some evidence that she reimbursed U.S. Tobacco after the audit, Chambers did not prove as a matter of law that she documented the reimbursement with the comptroller so as to be entitled to credit for the out-of-state tax. We accordingly overrule issue one.

In her second issue, Chambers claims the trial court erroneously allowed the State to ambush her at trial with evidence that was inconsistent with information it provided in discovery. Chambers argues that the court erred by overruling her motion to strike the State's evidence. In two interrogatories submitted before trial, Chambers asked the State to identify each period it contended she incorrectly reported taxes and to identify each payment she made

during the liability period. The document the State provided supplies this information. Chambers complains because the total tax due that she extrapolated from the document differs significantly from the amount Hawkins testified to at trial. Chambers's extrapolation, however, does not account for overdue amounts the auditor found during the audit in addition to the amounts Chambers incorrectly reported in each tax period. That Chambers interpreted the document in an unwarranted manner does not entitle her to relief on appeal.

Assuming that the State's document was unresponsive, however, the failure to obtain a pretrial ruling on a discovery dispute that exists before trial waives any claim for sanctions based on that conduct. *Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993). Because Chambers failed to move to compel a responsive answer before trial, the trial court properly overruled her motion to strike. We overrule issue two.

We affirm the trial court's judgment.

_____

Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Affirmed

Filed: February 28, 2001

Do Not Publish