

OFFICE *of the* ATTORNEY GENERAL
GREG ABBOTT

January 10, 2003

The Honorable Steven D. Wolens
Chair, Committee on State Affairs
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0010

Re: Whether the divestiture provision in section 12.152(b) of the Utilities Code applies to an interest under section 12.053(b)(1)(B) (RQ-0575-JC)

Dear Representative Wolens:

You ask about the relationship between section 12.053 and section 12.152 of the Utilities Code, both of which provide that a person with certain pecuniary interests is not eligible for appointment as commissioner of the Public Utility Commission (the "PUC" or "Commission").[1] Unlike section 12.053, section 12.152 provides that a person who discloses and divests certain types of interests is not ineligible. You ask in essence whether the divestiture provision in section 12.152(b) applies to an interest under section 12.053(b)(1)(B). We conclude that the section 12.152(b) divestiture provision cures a disqualification due to an interest under section 12.053(b)(1) that also falls within section 12.152(a)(2)(B). It does not cure a disqualification due to an interest that falls under section 12.053(b)(1) but that is not within the scope of section 12.152(a)(2)(B).

Section 12.053(b)(1)(B) and section 12.152(a)(2)(B) contain similar but not identical restrictions on a person's eligibility for appointment as commissioner of the PUC. Section 12.053(b) provides in pertinent part as follows:

> (b) *A person is not eligible for appointment as a commissioner if the person*:
>
> (1) *at any time during the two years preceding appointment*:
>
> . . . .

---

[1]*See* Letter from Honorable Steven D. Wolens, Chair, Committee on State Affairs, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General (July 9, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

(B) owned or controlled, directly or indirectly, stocks or bonds of any class with a value of $10,000 or more in a public utility, affiliate, or direct competitor of a public utility; or

(2) is not qualified to serve under Section 12.151, 12.152, or 12.153.

TEX. UTIL. CODE ANN. § 12.053 (Vernon 1998) (emphasis added); *see also id.* §§ 11.003(2) (Vernon Supp. 2003) (defining "affiliate"), 11.004 (Vernon 1998) (defining "utility"), 11.006 (defining "affiliate").

Similarly, section 12.152 provides in pertinent part:

(a) *A person is not eligible for appointment as a commissioner* or executive director of the commission *if*:

. . . .

(2) the person or the person's spouse:

. . . .

(B) directly or indirectly owns or controls more than a 10 percent interest or a pecuniary interest with a value exceeding $10,000 in:

(i) a business entity or other organization that is regulated by or receives funds from the commission; or

(ii) a utility competitor, utility supplier, or other entity affected by a commission decision in a manner other than by the setting of rates for that class of customer.

*Id.* § 12.152(a) (Vernon Supp. 2003) (emphasis added); *see also id.* §§ 11.003(1) (defining "affected person"), 11.005 (Vernon 1998) ("In this title, *an entity*, including a utility competitor or utility supplier, *is considered to be affected in a manner other than by the setting of rates* for that class of customer if during a relevant calendar year the entity provides fuel, utility-related goods, utility-related products, or utility-related services to a regulated or unregulated provider of telecommunications or electric services or to an affiliate in an amount equal to the greater of $10,000 or 10 percent of the person's business.") (emphasis added). Section 12.152, in speaking in terms of ownership or control of a "pecuniary interest" rather than "stocks or bonds" and including within the list of prohibited interests ownership or control in a business that "receives funds from the commission" or in another "entity affected by a commission decision in a manner other than by the setting of rates for that class of customer," applies to a broader universe of interests than section 12.053(b)(1). *See id.* §§ 12.053(b)(1) (Vernon 1998), 12.152(a)(2)(B) (Vernon Supp. 2003). Furthermore, section 12.053 applies only to interests owned by the potential PUC member, whereas

section 12.152 applies to interests owned both by the potential PUC member and his or her spouse. *See id.* §§ 12.053(b)(1)(B), 12.152(a)(2). On the other hand, section 12.053 applies to interests owned at any time during the two years preceding appointment, whereas section 12.152 applies to interests owned at the time of appointment. *See id.* §§ 12.053(b)(1), 12.152(a)(2)(B).

Unlike section 12.053, section 12.152 contains an exception that provides that a person who has a pecuniary interest described by section 12.152(a)(2)(B) may be appointed commissioner if he or she discloses and divests the interest:

> (b) A person otherwise ineligible because of Subsection (a)(2)(B) may be appointed to the commission and serve as a commissioner or may be employed as executive director if the person:
>
> (1) notifies the attorney general and commission that the person is ineligible because of Subsection (a)(2)(B); and
>
> (2) divests the person or the person's spouse of the ownership or control:
>
> (A) before beginning service or employment; or
>
> (B) if the person is already serving or employed, within a reasonable time.

*Id.* § 12.152(b) (Vernon Supp. 2003).

Certain pecuniary interests, such as the ownership of stock with a value exceeding $10,000 in a public utility or a direct competitor of a public utility, fall under both section 12.053(b)(1)(B) and section 12.152(a)(2)(B). *See id.* §§ 12.053(b)(1)(B) (Vernon 1998) (a person is ineligible for appointment if he or she at any time during the preceding two years "owned or controlled, directly or indirectly, stocks or bonds of any class with a value of $10,000 or more in a public utility, affiliate, or direct competitor of a public utility"), 12.152(a)(2)(B) (Vernon Supp. 2003) (a person is ineligible for appointment if the person "directly or indirectly owns or controls more than a 10 percent interest or a pecuniary interest with a value exceeding $10,000 in . . . a business entity or other organization that is regulated by . . . the commission" or "a utility competitor"). In light of this overlap, you ask whether the divestiture provision in section 12.152(b) cures a conflict under section 12.053(b)(1)(B):

> Can an appointee to the Public Utility Commission of Texas who owns or controls, directly or indirectly, stocks or bonds with the value of $10,000 or more [in a public utility, affiliate, or direct competitor of a public utility], at any time during the two years preceding appointment, cure that conflict and therefore be eligible for service if that person notifies the attorney general and commission that the person is ineligible because of this conflict, and divests him/herself

of the ownership or control of the stock either before the beginning
of service or employment or within a reasonable period of time?

Request Letter, *supra* note 1, at 2.  Or you ask, "Put a different way, does the cure provision on eligibility in Sec. 12.152(b) apply to the conflict provision of Sec. 12.053(b)(l)?"  *Id.* at 3.  Based on the legislative history, we conclude that the section 12.152(b) divestiture provision "cures a conflict" due to an interest under section 12.053(b)(1) that also falls within section 12.152(a)(2)(B).  It does not "cure a conflict" due to an interest that falls under section 12.053(b)(1) but that is not within the scope of section 12.152(a)(2)(B).

In construing these provisions, we must attempt to give effect to the legislature's intent.  *See* TEX. GOV'T CODE ANN. §§ 311.021, 311.023 (Vernon 1998); *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex. 1997).  To do so, we construe statutes according to their plain language. *See RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607-08 (Tex. 1985); *Bouldin v. Bexar County Sheriff's Civil Serv. Comm'n*, 12 S.W.3d 527, 529 (Tex. App.–San Antonio 1999, no pet.); *see also Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999) (where codified statute is unambiguous, plain-meaning rule applies even if codification is inconsistent with its statutory predecessor).  When a statute is ambiguous, we may consider, among other things, the object sought to be attained, the circumstances under which a statute was enacted, legislative history, and the consequences of a particular construction.  *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998); *see also id.* § 311.021 ("In enacting a statute, it is presumed that . . . the entire statute is intended to be effective[,] a just and reasonable result is intended[, and] a result feasible of execution is intended . . . .").

Sections 12.053 and 12.152 conflict, creating an ambiguity that cannot be resolved on the basis of the statutes' plain language.  Both provisions address eligibility for appointment as commissioner of the PUC and describe overlapping disqualifying interests, such as ownership of stock in a public utility or a public utility competitor. *See* TEX. UTIL. CODE ANN. §§ 12.053(b)(1)(B) (Vernon 1998), 12.152(a)(2)(B) (Vernon Supp. 2003).  Importantly, however, section 12.152 contains a divestiture provision, whereas section 12.053 does not. *See id.* §§ 12.053, 12.152(b). Section 12.152 permits the divestiture of interests that pose an absolute bar to appointment under section 12.053.  Although subsection (b)(2) of section 12.053 mentions section 12.152, that reference does not indicate how the two provisions should be reconciled. *See id.* § 12.053(b)(2) (Vernon 1998) ("A person is not eligible for appointment . . . if the person . . . is not qualified to serve under Section 12.151, 12.152, or 12.153.").

Because of this ambiguity, we turn to the legislative history for guidance.  The language in section 12.053 predates the language in section 12.152 by twenty years.  When the Public Utility Regulatory Act was first enacted in 1975, as article 1446c, it contained a provision, section 6(a), that made a person ineligible for appointment to the PUC "if at any time during the two year period immediately preceding his appointment . . . he owned or controlled, directly or indirectly, stocks or bonds of any class with a value of $10,000, or more in a public utility or any affiliated interest."  Act

of June 2, 1975, 64th Leg., R.S., ch. 721, art. II, § 6(a), 1975 Tex. Gen. Laws 2327, 2331 (codified as article 1446c, § 6(a) of the Revised Civil Statutes).[2]

In 1995, the Seventy-fourth Legislature adopted Senate Bill 319, a nonsubstantive recodification of the Public Utility Regulatory Act, that repealed article 1446c and enacted article 1446c-0, titled the "Public Utility Regulatory Act of 1995."[3]  In Senate Bill 319, section 6(a) of article 1446c became section 1.023(c) of article 1446c-0.[4]

Later in the same session, the legislature adopted Senate Bill 373, which substantively amended the Public Utility Regulatory Act of 1995 and continued the PUC following sunset review.[5] In Senate Bill 373, the legislature substantively amended section 1.023(c)[6] and added subsections (e) and (f) to section 1.023.[7]  Those two subsections are the genesis of what is now section 12.152. Because the legislature amended section 1.023(c), the legislature clearly did not intend the addition of section 1.023(e) and (f) to repeal section 1.023(c).  The divestiture provision, section 1.023(f), very clearly applied only to an interest under section 1.023(e)(2)(B), but it applied "[n]otwithstanding any other provision of this Act."  Act of May 27, 1995, 74th Leg., R.S., ch. 765, § 1.06, sec. 1.023(f), 1995 Tex. Gen. Laws 3972, 3973 ("*Notwithstanding any other provision of this Act*, a person otherwise ineligible *because of the application of Subsection (e)(2)(B)* of this section may be appointed . . . if the person . . . .") (emphasis added).

---

[2]A separate provision, section 6(b), prohibited a commissioner from having certain interests "during his period of service," and section 6(f) provided for divestiture by a commissioner "upon becoming the owner of any stocks or bonds or other pecuniary interest in a public utility or other affiliated interest . . . otherwise than voluntarily."  Act of June 2, 1975, 64th Leg., R.S., ch. 721, art. II, § 6(b), (f), 1975 Tex. Gen. Laws 2327, 2331-32.  The substance of these two provisions now appears in section 12.154(f) of the Utilities Code, which applies to a commissioner "[d]uring the period of service with the commission."  TEX. UTIL. CODE ANN. § 12.154(a), (f) (Vernon 1998).  As section 12.154 applies to interests acquired by a commissioner while serving on the PUC, it is not relevant here.

[3]*See* Act of Mar. 29, 1995, 74th Leg., R.S., ch. 9, 1995 Tex. Gen. Laws 31.

[4]*See id.* at 34.

[5]*See* Act of May 27, 1995, 74th Leg., R.S., ch. 765, 1995 Tex. Gen. Laws 3972; SENATE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. S.B. 373, 74th Leg., R.S. (Apr. 24, 1995) (bill continues and revises functions of the PUC).

[6]*See* Act of May 27, 1995, 74th Leg., R.S., ch. 765, 1995 Tex. Gen. Laws 3972, 3973 (adding interest in "direct competitor of a public utility" to list of disqualifying interests).

[7]*See id.*  New subsection (e) of section 1.023 began with the language – "[a] person is not eligible for appointment as a *public* member of the commission" – even though the 1995 amendments did not provide for a special category of "public" member of the PUC.  *See id.* (emphasis added).  Rather, Senate Bill 373 amended the provision establishing qualifications for commissioners to provide that to be eligible for appointment as a commissioner a person must be "a representative of the general public," so all members were "public members."  *See id.* (amending section 1.023(a)).  A bill analysis indicates that both amendments were based on standard Sunset Commission language.  *See* HOUSE COMM. REPORT, BILL ANALYSIS, Tex. S.B. 373 (May 20, 1995).  In 1997, the legislature deleted the reference to a "public" member when it codified section 1.023(e) in section 12.152 of the Utilities Code.  *See* TEX. UTIL. CODE ANN. § 12.152 revisor's note (Vernon 1998) ("Because, under the law as amended [in 1995], each member of the commission must be a 'public' member, the reference to 'public' is omitted from the revised law as unnecessary.").

The legislative history indicates that the purpose of this legislation was to prevent conflicts of interest on the part of commissioners. A bill analysis states that the amendment to section 1.023(c) "[s]pecifies that conflict of interest provisions apply to direct competitors of utilities" and that section 1.023(e) applies standard Sunset Commission language to "prohibit[] conflicts of interest for commission members." HOUSE COMM. REPORT, BILL ANALYSIS, Tex. S.B. 373, 74th Leg., R.S. (May 20, 1995). In addition, an interim report to the Seventy-fourth Legislature that appears to be the genesis of the bill recommended that the conflict of interest provisions for PUC commissioners be tightened. *See* TEXAS ALTERNATIVES: COMPETITIVE AND REGULATORY OPTIONS IN TELECOMMUNICATIONS AND ELECTRIC POWER, A REPORT TO THE 74TH LEGISLATURE, JOINT INTERIM COMM. ON TELECOMMUNICATIONS, JOINT INTERIM COMM. ON THE PUC, AND THE TEXAS SUNSET ADVISORY COMM'N, at 16-17 (Jan. 10, 1995) ("Recommendation 7: Tighten the conflict of interest provisions for PUC commissioners and apply them to the executive director, the general counsel, and the public counsel."); *see also* TEXAS SUNSET COMM'N REPORT TO THE 74TH LEGISLATURE, at 3 (1995) (explaining that Sunset Commission made no independent recommendations on the PUC but rather joined with interim committees in publication of a final report and recommendations).

In 1997, the legislature codified the Public Utility Regulatory Act of 1995 in Title 2 of the Utilities Code as part of the state's continuing statutory revision program. *See* TEX. UTIL. CODE ANN. §§ 1.001, 11.001 (Vernon 1998). The legislature intended the codification to be nonsubstantive. *See id.* § 1.001(a). Interestingly, the legislature separated section 1.023(c), the eligibility provision dating from 1975, and section 1.023(e) and (f), the eligibility and divestiture provisions dating from 1995, into separate statutes in separate subchapters. Section 1.023(c) became Utilities Code section 12.053 in Subchapter B, entitled "Commission Appointment and Functions"; section 1.023(e) and (f) became Utilities Code section 12.152 in Subchapter D, entitled "Prohibited Relationships and Activities." A cross-reference to section 12.152 was added to section 12.053 as subsection (b)(2). *See id.* § 12.053 revisor's note ("The revised law adds a cross-reference to Sections 12.151, 12.152, and 12.153, which also specify eligibility for appointment as a commissioner."). Section 12.152(b), the codification of the divestiture provision, omitted the language "notwithstanding any other provision of this Act" that had been included in section 1.023(f). *See id.* § 12.152 (Vernon Supp. 2003). The Revisor's Note to section 12.152 does not mention this omission. *See id.* revisor's note. Significantly, the 1997 codification of the Public Utility Regulatory Act of 1995 did not clarify the relationship between the two provisions. *See Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 286 (Tex. 1999) (when "specific provisions of a 'nonsubstantive' codification and the code as a whole are direct, unambiguous, and cannot be reconciled with prior law, the codification rather than the prior, repealed statute must be given effect").

Based on this legislative history, we conclude that sections 12.053 and 12.152 must be harmonized to the extent possible and that meaning must be given to both. The critical legislative history dates from 1995, when the legislature inserted the new eligibility provision, now section 12.152, into the Public Utility Regulatory Act of 1995 as standard sunset language, while amending the older eligibility provision, now section 12.053, that dated from 1975. From these two actions, it is clear that the legislature did not intend to repeal the older provision. It is also evident from the express language of the former statute, however, that the legislature intended the divestiture

provision to apply "[n]otwithstanding any other provision of this Act." Act of May 27, 1995, 74th Leg., R.S., ch. 765, § 1.06, sec. 1.023(f), 1995 Tex. Gen. Laws 3972, 3973 (*"Notwithstanding any other provision of this Act,* a person otherwise ineligible *because of the application of Subsection (e)(2)(B)* of this section may be appointed . . . if the person . . . ."). Thus, while the legislature did not intend to repeal the older provision, it appears to have intended the new divestiture provision to apply to interests that would fall under both provisions. Moreover, under the rules of statutory construction, to the extent section 12.053 and the section 12.152 divestiture provision conflict, section 12.152 prevails as the more recently enacted provision. *See* TEX. GOV'T CODE ANN. § 311.025(a) (Vernon 1998) ("if statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails") (Code Construction Act). This construction gives meaning to both provisions and, because it requires the divestiture of interests that may pose a conflict, effectuates the legislature's intent to prevent conflicts of interest on the part of Commission members.

Accordingly, we conclude that the section 12.152(b) divestiture provision cures a disqualification due to an interest under section 12.053(b)(1)(B) that also falls within section 12.152(a)(2)(B). By its plain language, section 12.152(b) does not cure disqualification due to an interest that falls under section 12.053(b)(1) but that is not within the scope of section 12.152(a)(2)(B). *See* TEX. UTIL. CODE ANN. § 12.152(b) (Vernon Supp. 2003) ("A person otherwise ineligible *because of Subsection (a)(2)(B)* may be appointed to the commission and serve as a commissioner . . . if the person . . . .") (emphasis added).

Finally, we note that the two statutes conflict in yet another respect, which we do not resolve here. Section 12.053 ineligibility is triggered by interests owned at any time during the two years preceding appointment, whereas section 12.152 ineligibility is triggered by interests owned at the time of appointment. *See id.* §§ 12.053(b)(1)(B) (Vernon 1998), 12.152(a)(2)(B) (Vernon Supp. 2003). It may be the case that a person who is a candidate for appointment to the Commission had an interest under section 12.053(b)(1)(B) within the preceding two years but does not presently have the interest. If that interest was of a type covered by section 12.152(a)(2)(B), it would make sense, as a practical matter, that the prospective appointee could satisfy the divestiture provision by disclosing the interest under section 12.152(b)(1). *See id.* § 12.152(b)(1) ("A person otherwise ineligible . . . may be appointed to the commission and serve as a commissioner . . . if the person . . . notifies the attorney general and commission . . . ."). However, section 12.152(b) permits the divestiture of only those interests that fall within section 12.152(a)(2)(B), which does not appear to contemplate interests owned or controlled prior to the time of appointment. *See id.* § 12.152(a)(2)(B) ("A person is not eligible for appointment as a commissioner . . . if . . . the person or the person's spouse . . . *owns or controls* . . . ."), (b) ("A person otherwise ineligible *because of Subsection (a)(2)(B)* may be appointed to the commission and serve as a commissioner . . . if the person . . . .") (emphasis added).

## S U M M A R Y

Utilities Code section 12.053 and section 12.152 provide that a person with certain pecuniary interests is not eligible for appointment as commissioner of the Public Utility Commission. Unlike section 12.053, section 12.152 provides that a person who discloses and divests certain types of interests is not disqualified. The section 12.152(b) divestiture provision cures a disqualification due to an interest under section 12.053(b)(1) that also falls within section 12.152(a)(2)(B). It does not cure a disqualification due to an interest that falls under section 12.053(b)(1) but that is not within the scope of section 12.152(a)(2)(B).

Very truly yours,

GREG ABBOTT
Attorney General of Texas


BARRY R. MCBEE
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

RICK GILPIN
Deputy Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee