TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00335-CV






Appellant, Farmers Texas County Mutual Insurance Company

// Cross-Appellants, Irene Romo and Fenn Ratcliffe,

Individually and on Behalf of All Other Persons Similarly Situated


v.


Appellees, Irene Romo and Fenn Ratcliffe,

Individually and on Behalf of All Other Persons Similarly Situated

// Cross-Appellees, Farmers Texas County Mutual Insurance Company and

USAA County Mutual Insurance Company






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT

NO. D-1-GN-06-001824, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING





O P I N I O N


 In this declaratory judgment action, Plaintiffs Irene Romo and Fenn Ratcliffe
challenge the propriety of installment payment plan fees charged by USAA County Mutual Insurance
Company and an affiliate of Farmers Texas County Mutual Insurance Company for providing
installment payment plans to auto insurance policyholders. Romo and Ratcliffe claim that the
charges to policyholders for electing to pay premiums in installments pursuant to the payment plans
are not authorized by the Texas Insurance Code, violate the filed rate doctrine, and breach the
parties' contracts of insurance. They seek recovery of the installment payment plan fees they have
paid and also seek to have a class certified consisting of similarly situated policyholders.

 The trial court rendered declarations that (1) the installment fees at issue are subject
to certain filing requirements under the Texas Insurance Code, but (2) county mutual insurance
companies were not subject to these filing requirements until December 1, 2004, when they became
rate regulated, and therefore, (3) the charges were not prohibited by the insurance code prior to
December 1, 2004. Farmers and the Plaintiffs appeal. (1) Farmers argues that the fees in question have
never been and are not now subject to filing requirements under the insurance code provision in
question and, alternatively, even if the fees are subject to such filing requirements, the Plaintiffs have
no private right of action under the insurance code provisions at issue to recover the fees they paid. 
The Plaintiffs argue that the fees in question have been subject to filing requirements since the
companies began charging the fees, that they are entitled to declarations that the filed rate doctrine
applies to the fees prior to December 1, 2004, and that since neither insurer filed these charges with
the Department of Insurance, the insurers were not entitled to collect the fees.

 We conclude that the installment fees at issue were not subject to the filing
requirements alleged by the Plaintiffs under either the current version of the applicable statute or its
predecessor. Therefore, we reverse the district court's declarations to the contrary.


Background

 Farmers and USAA are county mutual insurance companies formed under the laws
of the State of Texas and each has a certificate of authority from the Commissioner of Insurance to
do business in the State of Texas. They both write six-month private passenger auto insurance
policies in Texas. In addition, an affiliate of USAA writes twelve-month residential property renters
policies in Texas.

 From October 1987 to October 2002, Romo (together with her husband who is now
deceased) was insured under a series of six-month private passenger auto policies written by Texas
Farmers Insurance Company. Texas Farmers Insurance Company withdrew from the private
passenger auto insurance market in Texas and, in October 2002, the Romos' policy was replaced by
a private passenger auto policy written by Farmers Texas County Mutual Insurance Company, one
of the defendants in this case. This policy has since been renewed every six months to the present. 
From November 2002 to the present, Ratcliffe has been insured under a series of six-month private
passenger auto policies written by USAA County Mutual Insurance Company.

 Both Romo and Ratcliffe were offered the option of paying the premiums for their
policies in monthly installments rather than in a single lump sum when due, and both elected to do
so. The option to pay in monthly installments included an additional service fee for the installment
plan that varied depending on the size of the premium payment. (2) The parties stipulate that both
options, (1) paying premiums in full upon renewal without incurring a service fee and (2) paying
premiums in monthly installments together with a service fee, were disclosed to Romo and Ratcliffe,
and that each voluntarily elected to pay premiums in installments along with the service fee.

 The installment payment plan offered to Farmers's insureds has, since 1984, been
offered by Farmers Insurance Exchange ("FIE"), an affiliate of Farmers. (3) Farmers's insureds, such
as Romo, who wish to take advantage of an installment payment plan sign a Monthly Payment Plan
Agreement with FIE that includes an agreement to pay the monthly service fee. FIE then collects
premium payments on behalf of Farmers as well as the service fee provided for in the Monthly
Payment Plan Agreement. FIE forwards the insurance premium on to Farmers and retains the service
fee pursuant to a 1984 Administrative Servicing Agreement between it and Farmers.

 The Administrative Servicing Agreement, filed with the State Board of Insurance in
1991, provides that FIE will perform "premium collection services" on behalf of Farmers for
"policyholders of [Farmers] who elect to remit premiums on a monthly payment plan." The
Administrative Servicing Agreement also provides that the service charges for providing the
installment payment plan are not premiums for insurance, but are charges for the services of FIE, and
are the property of FIE. This arrangement for premium collection services to be performed by FIE
for Farmers was deemed approved by the Commissioner of Insurance by operation of law pursuant
to the Holding Company Systems Regulatory Act and has never been disapproved or challenged by
the Commissioner of Insurance. See Tex. Ins. Code Ann. § 823.103 (West 2007); Act of May
27, 1991, 72d Leg., R.S., ch. 242, § 8.03, 1991 Tex. Gen. Laws 939, 1016-17, codified at former
Tex. Ins. Code art. 21.49-1, § 4(d), recodified by Act of May 22, 2001, 77th Leg., R.S., ch. 1419, § 1,
sec. 823.103, 2001 Tex. Gen. Laws 3658, 3700.

 USAA offered its insureds three different installment payment plans without using
the services of a subsidiary or affiliate company. USAA insureds such as Ratcliffe who elected to
pay their premiums in installments forwarded the service fee for the installment plan directly to
USAA together with each premium payment. As of May 1, 2004, USAA had stopped assessing a
fee for any of its installment payment plans.

 Romo and Ratcliffe originally filed this action in August 2003 seeking relief
individually as well as class relief for a class of similarly situated policyholders. They claim that
section 912.201 of the insurance code and its predecessor--article 17.25, section 6 of the insurance
code--required Farmers and USAA to file a schedule of the amounts they or their affiliates charged
policyholders for electing to pay their auto insurance premiums in installments over time rather than
in a single lump sum when due. (4) They asserted claims for declaratory relief to have these fees
declared subject to the filing requirements of section 912.201 and its predecessor as well as subject
to the filed rate doctrine. The Plaintiffs claim that, as a consequence of the filing requirements and
the filed rate doctrine, the defendants' collection of the fees was illegal and/or a breach of contract
because a schedule of the fees had not been filed with the Department of Insurance. Romo and
Ratcliffe also asserted three causes of action for damages: (1) overcharge, (2) breach of contract,
and (3) money had and received.

 Defendants Farmers and USAA answered and filed counterclaims for declaratory
relief seeking declarations that the installment payment plan fees in question are not subject to the
filing requirements of section 912.201 or its predecessor, and even if they were, the filed rate
doctrine did not operate to bar their collection of the fees. Thus, their collection of the fees was
authorized and legal. Since the cross-claims for declaratory relief were questions of law that would
govern whether the underlying class claims could go forward, the parties agreed to sever the claims
for declaratory relief from the claims for damages and filed cross-motions for summary judgment
in the severed declaratory judgment action. The parties stipulated to the material facts relating to
their claims for declaratory relief. On appeal, Farmers and USAA also assert that there is no private
right of action under section 912.201 and, therefore, the trial court lacked subject matter jurisdiction
over the Plaintiffs' claims for declaratory relief because Romo and Ratcliffe do not have standing
to pursue those claims.


Standard of Review

 We review the summary judgment de novo. Joe v. Two Thirty Nine Joint Venture,
145 S.W.3d 150, 156 (Tex. 2004). The standards for reviewing a summary judgment are well
established: (1) the movant must demonstrate that there is no genuine issue of material fact and that
it is entitled to judgment as a matter of law; (2) in deciding whether a disputed issue of material fact
exists that would preclude summary judgment, we take all evidence favorable to the non-movant as
true; and (3) we indulge every reasonable inference and resolve any doubts in favor of the
non-movant. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). When, as here,
both parties file motions for summary judgment and the court denies both in part and grants both in
part, we must review the summary judgment evidence presented by both sides, decide all questions
presented, and render the judgment that the trial court should have rendered. See City of Garland
v. Dallas Morning News, 22 S.W.3d 351, 356 (Tex. 2000). The material facts relating to the nature
of the installment plan service fees are not in dispute. Consequently, whether the service fees at
issue are subject to filing requirements under section 912.201 of the insurance code and its
predecessor is a question of law.


Subject Matter Jurisdiction

 Subject matter jurisdiction is essential to the authority of a court to decide a case. 
Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 443 (Tex. 1993). Standing is implicit
in the concept of subject matter jurisdiction and is a component of subject matter jurisdiction. Id.
at 443-45. Thus, a plaintiff must have standing for the court to have subject matter jurisdiction to
decide the merits of the claims. Id.; State Bar of Tex. v. Gomez, 891 S.W. 2d 243, 245 (Tex. 1994). 
Subject matter jurisdiction is never presumed and is an issue that may be raised for the first time on
appeal, and a lack of subject matter jurisdiction on the part of the court cannot be waived by the
parties. Texas Ass'n of Bus., 852 S.W.2d at 443-45.

 Farmers and USAA argue on appeal that the Plaintiffs do not have a private right of
action to enforce or seek a remedy for any potential violations of, or failures to comply with, section
912.201. They assert that the power to enforce section 912.201 rests exclusively with the
Department of Insurance and the Commissioner of Insurance, and that the Plaintiffs' claims for
declaratory relief in this case "arise under or are premised on" an alleged violation of section 912.201
and its predecessor. Therefore, Farmers and USAA conclude, the Plaintiffs lack standing to pursue
their claims for declaratory relief in this case because those claims necessarily involve an
adjudication of whether Farmers and USAA have failed to comply with section 912.201.

 Plaintiffs Romo and Ratcliffe counter that they are not seeking to pursue a private
cause of action for a violation of section 912.201 and its predecessor. Rather, they argue, they are
pursuing claims for breach of contract as well as common law claims for money had and received
and overcharge that happen to turn on whether Farmers and USAA filed the amounts they have
charged in accordance with section 912.201. They contend that if Farmers and USAA failed to file
the amount of the installment payment plan fees in accordance with section 912.201 and its
predecessor, such a failure would give rise to a breach of the parties' contracts of insurance under
the theory that the insurers are only allowed by law to contract for amounts that are filed pursuant
to section 912.201. Charging any amount not filed in accordance with section 912.201, they argue,
is illegal and is a breach of contract because insurers are allowed by law to collect only "lawfully
prescribed rates" pursuant to their contracts of insurance. Romo and Ratcliffe's theory is as follows:


 

 contracts of insurance require insurers to charge only lawfully prescribed amounts;


 


 by virtue of the filed rate doctrine, lawfully prescribed amounts for the policies
involved in this case are those amounts filed with the Department of Insurance in
accordance with section 912.201 and its predecessor;


 


 Farmers and USAA did not file the installment payment plan fees in accordance with
section 912.201;

 the installment payment plan fees, therefore, are not lawfully prescribed amounts that
may be charged;

 by charging and collecting the fees Farmers and USAA breached their contracts of
insurance with Romo and Ratcliffe giving rise to claims for breach of contract as well
as related claims for money had and received and overcharge; and,
 Romo and Ratcliffe have standing to seek declaratory relief as to whether the filed
rate doctrine and, as a corollary, section 912.201 apply to the installment payment
plan fees at issue not as a private cause of action for a failure to comply with section
912.201, but as a part of their contract dispute.



 The jurisdictional issue here is the Plaintiffs' standing to have their request for
declaratory relief adjudicated rather than the merits of the underlying cause of action for
breach of contract. In this instance, the standing issue is distinct from the merits. In such cases, a
court should not adjudicate the merits of the parties' claims in deciding the issue of standing. See
Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554-55 (Tex. 2000); In re Sullivan, 157 S.W.3d 911,
920 (Tex. App.--Houston [14th Dist.] 2005, orig. proceeding). Romo and Ratcliffe have sought
declaratory relief as to the application of a statute and the application of the filed rate doctrine to
certain items potentially addressed by that statute. They have pleaded that they seek this relief in
connection with their underlying claim for breach of contract. (5) The connection of section 912.201
to the request for declaratory relief here is that an alleged failure to comply with the filing
requirements of section 912.201 coupled with charging an unfiled amount constitutes a breach of the
contract of insurance. The Plaintiffs claim the failure to comply with section 912.201 while charging
the installment payment plan fees is a breach of contract and they will seek remedies for that breach. 
This may or may not be a viable claim, but this is the allegation. It does not imply a private right of
action to sue for a violation of section 912.201. The underlying dispute relating to the request for
declaratory relief is for breach of contract. The alleged noncompliance with the statute is simply one
component of the alleged breach of contract. Whether there is any merit to this theory or any merit
or viability to the underlying breach of contract claim is an inquiry appropriate for a disposition on
the merits of the underlying claim rather than disposition as a matter of standing and jurisdiction
with respect to the request for declaratory relief in this case.

 Romo and Ratcliffe have standing to seek a judicial resolution of the legal questions
of whether the statute at issue and the filed rate doctrine apply in the manner that they claim affects
the amounts that the insurers are allowed to charge under their contracts of insurance. As
policyholders alleging a breach of the insurance contract they have a justiciable interest in the
resolution of the questions. We hold that the trial court had subject matter jurisdiction to address
the questions presented by the claims for declaratory relief in this case.


Filing Requirements Under the Statute

 The Plaintiffs' claims are based on the argument that former article 17.25, section 6
of the insurance code and its amended version currently in force, section 912.201, required and
continue to require county mutual insurance companies to file with the Department of Insurance a
schedule of the amounts they charge insureds for allowing payments to be made in installments. 
Former article 17.25, section 6 provided:


 Sec. 6. Such companies shall file with the Board a schedule of its rates, the amount
of policy fee, inspection fee, membership fee, or initial charge by whatever name
called, to be charged its policyholders or those applying for policies.


Act of June 7, 1951, 52d Leg., R.S., ch. 491, § 1, art. 17.25, sec. 6, 1951 Tex. Gen. Laws 868, 1043
[hereinafter 1951 Act], repealed by Act of May 22, 2001, 77th Leg., R.S., ch. 1419, § 31(a), 2001
Tex. Gen. Laws 3658, 4208 [hereinafter 2001 Act]. Article 17.25, section 6 was recodified and
replaced effective June 1, 2003, see 2001 Act, § 33, 2001 Tex. Gen. Laws at 4201, by section
912.201 of the insurance code, which provides:


 A county mutual insurance company shall file with the department a schedule of the
amounts the company charges a policyholder or an applicant for a policy, regardless
of the term the company uses to refer to those charges, including "rate," "policy fee,"
"inspection fee," "membership fee," or "initial charge." A county mutual insurance
company shall file premium, expense, and loss experience data with the department
in the manner prescribed by the commissioner. An insurer shall file the schedules
and data required under this section according to rules promulgated by the
commissioner.


Tex. Ins. Code Ann. § 912.201 (West 2007).

 The text of article 17.25, section 6 was first enacted in 1947 as article 4860a-20,
section 2a(d) of the Texas Revised Civil Statutes. See Act of June 5, 1947, 50th Leg., R.S., ch. 367,
§ 1, sec. 2a(d), 1947 Tex. Gen. Laws 739, 741, repealed by 1951 Act, § 4, 1951 Tex. Gen. Laws
at 1094. It was recodified in 1951 without change as article 17.25, section 6 of the insurance code,
see 1951 Act, § 1, art. 17.25, sec. 6, 1951 Tex. Gen. Laws at 1049 (repealed 2001), and the text
remained unchanged by the legislature until the statute was again recodified as section 912.201
effective 2003, see 2001 Act, § 1, sec. 912.201, 2001 Tex. Gen. Laws at 3975. The recodification
of article 17.25, section 6 was part of the state's ongoing statutory revision and codification program
begun in 1963. The program contemplates a topic-by-topic revision of the state's general and
permanent statute law without substantive change. Tex. Ins. Code Ann. § 30.001(a) (West 2007).

 Former article 17.25, section 6 required county mutual insurance companies to file
a schedule of two types of charges to "policyholders or those applying for policies":


 (1) the company's rates; and


 (2) the amount of policy fee, inspection fee, membership fee, or initial charge by
whatever name called.


See 1951 Act, § 1, art. 17.25, sec. 6, 1951 Tex. Gen. Laws at 1043 (repealed 2001). The installment
payment plan fees at issue in this case do not fall into either of these categories. They are not a rate
nor a component of a rate. Nor are they an initial charge for a policy that might go by a variety of
labels such as "policy fee," "inspection fee," or "membership fee." It is undisputed by the parties
that the installment payment plan fees at issue are a charge associated with the company's providing
an optional plan for a policyholder to pay his or her premium in installments. The parties have
stipulated that a policyholder may avoid these charges altogether and receive the same insurance
coverage by paying the premium for the policy in full when due. Therefore, since the fees at issue
are not a rate or an initial charge for a policy, former article 17.25, section 6 did not require county
mutual insurers to file a schedule of amounts they or their affiliates charged for providing the option
to pay premiums in installments. Accordingly, the trial court erred in declaring that the installment
fees are charges covered by former article 17.25, section 6.

 This interpretation is consistent with the regulatory structure implemented by the
Department of Insurance. Since 1992, the Department has required auto insurers other than county
mutual insurers to offer an installment payment plan pursuant to Rule 14 of the Texas Automobile
Rules and Rating Manual. Rule 14 was made applicable to county mutual insurers in 1997 pursuant
to Personal Auto Policy ("PAP") Special Instruction No. 11, which is part of the policy form that
county mutual insurers are required to use in Texas. Rule 14 both requires auto insurers to make an
installment payment plan available to policyholders and expressly allows the insurers to charge a
regulated fee for making the plan available. It is undisputed that Farmers and USAA were in
compliance with Rule 14 during all relevant time frames.

 Former article 17.25, section 6 was in force at the time Rule 14 was originally
promulgated and at the time that the Department of Insurance made Rule 14 applicable to county
mutual insurers. The Department of Insurance has never taken the position that the fees authorized
by Rule 14 were required to be filed pursuant to former article 17.25, section 6 or its successor
section 912.201. It is undisputed that the Department has been responsible for the enforcement of
former article 4860a-20, section 2a(d), former article 17.25, section 6, and current section 912.201
since 1947 and that the Department has never required a county mutual insurer to file the amount
of a service charge for an installment payment plan pursuant to these statutes. The Department
has a specific regulatory scheme with respect to installment payment plans and the fees insurers
are allowed to charge with respect to those plans. The Department does not consider former
article 17.25, section 6 and its successor section 912.201 part of that regulatory scheme. 
"Construction of a statute by the administrative agency charged with its enforcement is entitled
to serious consideration, so long as the construction is reasonable and does not contradict the
plain language of the statute." Tarrant Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 (Tex. 1993);
see State v. Public Util. Comm'n of Tex., 883 S.W.2d 190, 196 (Tex. 1994) ("[T]he
contemporaneous construction of a statute by the administrative agency charged with its enforcement
is entitled to great weight."); Texas Employers' Ins. Ass'n v. Holmes, 196 S.W.2d 390, 395
(Tex. 1946) ("[T]he practical interpretation of the Act by the agency charged with the duty of
administering it is entitled to the highest respect from the courts."); Stanford v. Butler, 181 S.W.2d
269, 273 (Tex. 1944) ("The contemporaneous construction of an act by those who are charged
with the duty of its enforcement . . . is worthy of serious consideration as an aid to interpretation,
particularly where such construction has been sanctioned by long acquiescence." (quoting 39 Tex.
Jur. Statutes § 125 (1936))). The Department of Insurance's practical construction of former article
17.25, section 6 and its regulatory scheme for dealing with premium installment payment
plans including the charges for those plans are consistent with the language of the statute and entitled
to serious consideration. Nothing in the language of former article 17.25, section 6 requires
the adoption of an interpretation inconsistent with the interpretation and practice of the Department
of Insurance.

 The Department of Insurance continued its regulatory scheme relating to premium
installment payment plans and did not require schedules of charges for those plans to be filed even
after former article 17.25, section 6 was replaced by section 912.201. The Department's treatment
of the statute before and after the 2003 recodification process was the same. This is, of course,
consistent with the proposition that the recodification process did not make a substantive change. 
See Tex. Ins. Code Ann. § 30.001(a). However, the question of whether the recodification of article
17.25, section 6--now section 912.201--did, in fact, involve a substantive change (even if
inadvertent) to now require that the installment payment plan charges at issue are subject to filing
requirements raises an additional issue.

 Romo and Ratcliffe point to the language of the recodified statute and argue that the
recodified version requires county mutual insurers to file a schedule of any amount that the company
charges a policyholder or applicant for a policy regardless of what the charge is for. Romo and
Ratcliffe rely on the following language in section 912.201:


 A county mutual insurance company shall file with the Department a schedule of the
amounts the company charges a policyholder or an applicant for a policy, regardless
of the term the company uses to refer to those charges . . . .


Id. § 912.201. This language is, from a grammatical standpoint, a structural change from the
language of former article 17.25, section 6. It uses essentially the same words, but moves the clauses
around in a way that allows for an argument that, whether deliberate or not, the meaning of the
statute was changed in the recodification process. See Fleming Foods of Tex., Inc. v. Rylander, 6
S.W.3d 278, 286 (Tex. 1999) (when specific provisions of a "nonsubstantive" codification are direct,
unambiguous, and cannot be reconciled with prior law, the codification rather than the prior,
repealed statute must be given effect). The reshuffling of the clauses in the statute certainly alters
the clear statement in former article 17.25, section 6 that limited the charges covered to two
specific categories--(1) a rate, and (2) an initial charge for a policy (by whatever name called). The
structure of the recodified statute provides less clear guidance as to what charges are covered and
what charges are not.

 On its face, the new language could conceivably be read as requiring county mutual
insurers to file a schedule of any amount they charge policyholders (or applicants for policies) for
literally anything. However, there are a number of problems with this construction. If read to apply
to any charge, the statute would cover any type of charge by an insurance company--whether or not
the charge was related to the insurance policy or the insurance relationship--simply because the
person charged also happened to be a policyholder or an applicant for a policy. For example, there
would be nothing to limit the statute's application to amounts a company might charge a person for
renting a piece of property owned by the company, or for amounts the company might charge for
using a company parking garage if the person charged also happened to be a policyholder. Such an
extraordinarily broad reading of the statute would be possible, but not reasonable.

 The legislature plainly intended the statute to require county mutual insurers to file
amounts that they charge "a policyholder" or "an applicant for a policy" that relate to the policy of
insurance. (6) This is evidenced by the fact that the list of examples of charges "included" under the
statute's coverage are all charges tied to the purchase of the insurance policy--rate, policy fee,
inspection fee, membership fee, or initial charge. "Includes" is a term of enlargement and not of
limitation or exclusive enumeration and does not create a presumption that components not
expressed are excluded. Tex. Gov't Code Ann. § 311.005(13) (West 2005). However, the principle
of statutory construction known as ejusdem generis limits the breadth of general terms in a statute
when the statute gives examples or a list of what is intended to be covered. "[W]hen words of a
general nature are used in connection with the designation of particular objects or classes of persons
or things, the meaning of the general words will be restricted to the particular designation." See
State v. Fidelity & Deposit Co. of Md., 223 S.W.3d 309, 312 (Tex. 2007) (quoting Hilco Elec. Coop.
v. Midlothian Butane Gas Co., 111 S.W.3d 75, 81 (Tex. 2003)). In other words, the principle of
ejusdem generis directs that the term "charges" as used in section 912.201--since it is used generally
without any definition--be interpreted to include only charges of the same kind, class, or nature as
the types of charges listed in the statute. Id.

 In addition, reading the statute to include charges that have nothing at all to do with
the insurance policy arguably runs afoul of the principle of statutory construction that we consider
the consequences of a particular construction and not construe a statute in a manner that will produce
absurd results. Tex. Gov't Code Ann. § 311.023 (West 2005); see Fleming Foods, 6 S.W.3d at 284;
see also State v. Hodges, 92 S.W.3d 489, 494 (Tex. 2002). To construe the statute to apply to any
and all charges an insurer might make to a policyholder regardless of whether those charges relate
to the insurance policy--e.g. parking garage fees for visitors to the company's building who happen
to be policyholders or cafeteria charges to employees who use the company's cafeteria and are also
policyholders--would lead to absurd and plainly unintended results. As the Texas Supreme Court
noted in State v. Hodges, the construction of the statute advocated by Hodges in that case was
linguistically possible, but it was not reasonable nor required by the statute's language, and the court
declined to adopt it. 92 S.W.3d at 495. Similarly, here it is possible to construe the recodified
statute as applying to charges made by an insurer regardless of their connection to the policy of
insurance, but such a construction is not reasonable in light of the purpose of the statute, the history
of the statute, the text read as a whole, the regulatory scheme in place addressing the charges at issue,
and the potential consequences of such a broad construction. Thus, given the history and text of
section 912.201, we are of the view that it should be interpreted to include only those charges that
are of the same kind, class, or nature as a rate, policy fee, inspection fee, membership fee, or initial
charge.

 Another problem with the construction advocated by Romo and Racliffe is that it runs
counter to the stated legislative intention that the 2003 codification be without substantive change. 
Tex. Ins. Code Ann. § 30.001(a). The Plaintiffs' construction would necessarily entail a dramatic
change in this statute--a change at odds with the Department of Insurance's regulatory enforcement
of the statute. It would involve changing the charges covered from two specific categories that are
expressly associated with the policy of insurance to anything an insurer might find itself charging
a policyholder, whether the charge relates to the insurance relationship or something else altogether. 
Such an inadvertent change is certainly possible, as demonstrated by Fleming Foods of Texas, Inc.
v. Rylander, 6 S.W.3d 278 (Tex. 1999). The court held in that case that if the change occurs in clear,
unambiguous language in the recodified version of the statute, we are obligated to enforce the statute
as written and give effect to the intention of the legislature as expressed in the unambiguous words
of the statute unless there is an obvious error, such as a typographical error, or application of the
literal language of the statute would produce an absurd result. Fleming Foods, 6 S.W.3d at 284-85. 
The change in the statute at issue here, however, is not the same sort of change that the court was
faced with in Fleming Foods. Here, the change in the structure of the statute does not dictate a single
construction that is so clear, unambiguous, and without absurd result that we are compelled to give
it effect. Rather, the recodified statute, while conceivably subject to the construction advocated by
the Plaintiffs, can be and is more reasonably construed in a more limited fashion when read as a
whole with appropriate principles of statutory construction applied.

 Construing section 912.201 to apply to charges that are of the same kind, class, or
nature as a rate or an initial charge for a policy has the benefit of reconciling the history of the
statute, the Department of Insurance's regulatory view of the statute, the existence of a specific,
separate regulatory structure to deal with the installment payment plan fees at issue, and the fact that
the codification of section 912.201 was intended to be done without substantive change. The
Plaintiffs' construction would put these various factors in conflict and create unnecessary problems
in the enforcement and application of section 912.201. Consequently, we hold that section 912.201,
as currently formulated, applies to charges made by county mutual insurers that are of the same kind,
class, or nature as a rate or an initial charge for a policy regardless of what that charge is called. 
As noted previously, the installment payment plan fees at issue in this case are not such a charge. 
Accordingly, the trial court erred in declaring that the installment fees are charges covered by
section 912.201.




Conclusion

 Our conclusion that former article 17.25, section 6 and its successor section 912.201
do not apply to the installment payment plan fees at issue in this case effectively moots any question
regarding the application of the filed rate doctrine, and we do not reach that issue. We reverse
declarations 1, 2, and 3 in the Final Declaratory Judgment entered by the district court in this cause
and hold as follows:


 1. The fees charged by Farmers Texas County Mutual Insurance Company and
USAA County Mutual Insurance Company for making an installment
payment plan available for the payment of premiums on automobile insurance
policies are not charges covered by Texas Insurance Code section 912.201 or
its predecessor, former Texas Insurance Code article 17.25, section 6, and are
not required to be filed with the Texas Department of Insurance pursuant to
those statutes; and


 2. The collection of the service charges from Plaintiffs Irene Romo and Fenn
Ratcliffe by Farmers Texas County Mutual Insurance Company and USAA
County Mutual Insurance Company, respectively, for providing an
installment payment plan for the automobile insurance premiums paid by
Plaintiffs Irene Romo and Fenn Ratcliffe is not prohibited by law for failure
of Farmers Texas County Mutual Insurance Company and USAA County
Mutual Insurance Company to have filed a schedule of such charges with the
Department of Insurance pursuant to Texas Insurance Code section 912.201
or its predecessor, former Texas Insurance Code article 17.25, section 6.


 Our holding is limited to the legal questions of (1) the construction of section
912.201 and its predecessor as stated and (2) whether the charges at issue are subject to the filing
requirements of those statutes. We offer no opinion as to the propriety of the charges in any other
context or with respect to any other law.



 __________________________________________

 G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed in part; Reversed and Rendered in part

Filed: April 15, 2008
1. USAA did not appeal because it had not collected any of the type of fees in dispute after
December 1, 2004.
2. The installment fees at issue for the named plaintiffs varied between $3.00 and $6.50 per
month.
3. It is undisputed that Farmers and FIE are "affiliates" under the Holding Company Systems
Regulatory Act. Tex. Ins. Code Ann. § 823.003 (West 2007).
4. The claims are not based on an allegation that the service fees were not disclosed or were
misrepresented in any way. There is no dispute that the fees were fully and accurately disclosed both
to the Plaintiffs and to the Texas Department of Insurance, and that the Plaintiffs voluntarily elected
to use the offered installment plans and pay the additional fees. The crux of the Plaintiffs' claims
is that the insurers were required to file the amount of the service fees with the Texas Department
of Insurance and, unless the amounts were filed, policyholders could not be charged these fees
whether they and the Department of Insurance were aware of the fees or not.
5. The underlying causes of action for breach of contract, money had and received, and
overcharge have been severed into a separate cause number to allow resolution of the claims for
declaratory relief in this case. We address standing in this case only with regard to the requested
declaratory relief. We express no opinion as to the Plaintiffs' standing with respect to the underlying
causes of action in the severed cause.
6. Farmers and USAA argue that the language of section 912.201 mandates this interpretation
because the codified version of the statute should be read in such a way that the words "for a policy"
modify the term "charges" rather than the term "applicant." This grammatical maneuver would
make the statute literally apply only to charges "for a policy" made to a policyholder or an
"applicant" as opposed to any charge (unconstrained by modifying language) an insurer might make
to a policyholder or an "applicant for a policy." However, the history of the text of section 912.201
does not support this reading. Former article 17.25, section 6 applied to amounts "to be charged
policyholders or those applying for policies." The nonsubstantive revision represented by section
912.201 uses the phrase "amounts the company charges a policyholder or applicant for a policy." 
It is apparent that the codifiers were attempting to follow their statutory mandate to restate the law
"in modern American English to the greatest extent possible," and replaced the phrase "those
applying for policies" with the phrase "applicants for policies." See Tex. Ins. Code Ann. § 30.001(b)
(West 2007). Whether the replacement improved or modernized the English in the statute is
debatable. However, it is more reasonable--in light of the fact that the 2003 codification of article
17.25, section 6 was intended to be nonsubstantive--to read the phrase "for a policy" to be
associated with the term "applicant" rather than the term "charges."