# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00400-CV

### Glenn Hegar, Comptroller of Public Accounts of the State of Texas, Appellant

### v.

### Ryan, LLC, Appellee

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-12-002388, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Glenn Hegar, in his official capacity as the Texas Comptroller of Public Accounts,[1] appeals from the trial court's judgment declaring invalid and illegal subsection (a)(4) of Comptroller's rule 3.325, as adopted in 2011, and subsections (a)(4), (b)(10), and (e) of the rule, as amended in 2013. *See* 34 Tex. Admin. Code § 3.325 (Comptroller of Public Accounts, Refunds and Payments under Protest) (effective January 7, 2013) ("2013 rule"); 36 Tex. Reg. 4570 (adopting new § 3.325 and repealing existing § 3.325, effective July 19, 2011) (Comptroller of Public Accounts) ("2011 rule"). For the reasons that follow, we affirm the trial court's judgment in part and reverse and render in part.

---

[1] Glenn Hegar is substituted for Susan Combs, each in their official capacity as the Texas Comptroller of Public Accounts. *See* Tex. R. App. P. 7.2(a).

## BACKGROUND

Appellee Ryan, LLC is a tax services firm. As part of its business, it files and pursues sales and use tax refund claims on behalf of its clients. *See* Tex. Tax Code § 111.104(b) (authorizing tax refund claim to be filed by "person who directly paid the tax to this state or by the person's attorney, assignee, or other successor").

In 2012, Ryan sued the Comptroller, seeking declaratory relief pursuant to section 2001.038 of the Administrative Procedure Act (APA). *See* Tex. Gov't Code § 2001.038. Ryan sought a declaration from the court that subsection (a)(4) of the 2011 rule was facially illegal and invalid. That subsection provided:

(a)    Requirements for refund claims.

. . .

(4)    A person who requests a refund from the comptroller must:

(A)    submit a claim in writing that identifies the period during which the claimed overpayment was made and must state fully and in detail the specific grounds upon which the claim is based, including, at a minimum, each of the following about each transaction upon which a refund is requested:

    (i)      purchaser or seller's name, as appropriate;
    (ii)     invoice number, if applicable;
    (iii)    date of transaction;
    (iv)    description of the item(s) purchased or sold;
    (v)     specific reason for the refund, such as applicable statutory authority;
    (vi)    purchase or sale amount subject to refund;
    (vii)   total amount of tax refund requested;
    (viii)  identification of all local jurisdictions to which tax was remitted; and
    (ix)   if requesting a refund for taxes paid in error to a permitted seller, the seller's name, address and sales tax permit number or information that allows the comptroller to identify the seller's sales tax permit number;

2

(B)     submit the claim within the applicable limitations period as provided by subsection (b) of this section; and

(C)     submit supporting documents required by the comptroller to verify any refund claims or credits taken.

36 Tex. Reg. 4570 (effective July 19, 2011).  Ryan's complaint concerned the nine categories of transactional detail subsection (a)(4)(A) of the 2011 rule required to be filed at the time a refund claim was filed.  Ryan urged that this requirement "expressly impose[d] additional burdens, conditions, and restrictions on refund claims in excess of the provisions of Tax Code § 111.104." *See* Tex. Tax Code § 111.104;[2] *Office of Pub. Util. Counsel v. Public Util. Comm'n*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied) (describing facially invalid rules).

Shortly before the effective date of amendments to the 2011 rule, *see* 38 Tex. Reg. 148 (2013), Ryan amended its petition to include claims for declaratory relief challenging subsections (a)(4), (b)(10), and (e) of the 2013 rule.  Those subsections provide:

(a)     Requirements for refund claims.

(4)     A person who requests a refund from the comptroller must:

(A)     submit a claim in writing that states fully and in detail each reason or ground on which the claim is founded;

(B)     identify the period during which the claimed overpayment was made;

---

[2] Subsection 111.104(c) of the Tax Code requires a claim for a refund to "be written" and "state fully and in detail each reason or ground on which the claim is founded."  Tex. Tax Code § 111.104(c)(1), (2).  It also requires a claim to be filed "before the expiration of the applicable limitation period as provided by this code or before the expiration of six months after a jeopardy or deficiency determination becomes final, whichever period expires later."  *Id.* § 111.104(c)(3).

3

(C)     include, at a minimum, each of the following about each transaction upon which a refund is requested: (i) purchaser or seller's name, as appropriate; (ii) invoice number, if applicable; (iii) date of transaction; (iv) description of the item(s) purchased or sold; (v) specific reason for the refund, such as applicable statutory authority; (vi) purchase or sale amount subject to refund; (vii) total amount of tax refund requested; (viii) identification of all local jurisdictions to which tax was remitted; and (ix) if requesting a refund for taxes paid in error to a permitted seller, the seller's name, address and sales tax permit number or information that allows the comptroller to identify the seller's sales tax permit number;

(D)     submit the claim within the applicable limitations period as provided by subsection (b) of this section; and

(E)     submit supporting documentation to verify any refund claimed or credit taken, such as copies of invoices, cancelled checks, and executed contracts. If the supporting documentation cannot be easily mailed or otherwise easily submitted to the agency, the refund claim must include a statement that all supporting documentation necessary to verify the claim will be made available to the comptroller upon request.

(b)     Statute of limitations for refund claims.

. . .

(10)    Requirements to toll the statute of limitations.

(A)     Subject to the other paragraphs of this subsection regarding the statute of limitations, a refund claim that is filed with the comptroller will toll the statute of limitations if the following requirements are met:

(i)     the claim states fully and in detail each reason or ground on which the claim is founded, as required by subsection (a)(4)(A) of this section;

(ii)    the claim identifies the period during which the claimed overpayment was made, as required by subsection (a)(4)(B) of this section;

(iii)   if the claim is being filed by a non-permitted person who is an assignee of or successor to a refund that may be owed, the

4

person submits with the claim for refund the assignment of right to refund; and

    (iv)    if a person other than the person to whom the refund is due is submitting the claim for refund, a power of attorney is submitted with the claim.

(B)    If the refund claim meets the requirements of subparagraph (A) of this paragraph, but does not meet the other requirements under subsection (a)(4) of this section, the claim will be denied and the person may request a hearing as provided by subsection (e) of this section.

(C)    If a person does not meet the requirements of subparagraph (A) of this paragraph, the statute of limitations will not be tolled.

. . .

(e)    Denial of refund claim.

(1)    The comptroller will notify the claimant if the comptroller determines that a refund claim cannot be granted in part or in full and will also notify the claimant which requirements of subsection (a)(4) of this section were not met. The claimant may then request a refund hearing within 30 days of the denial.

(2)    A person may not refile a refund claim for the same transaction or item, tax type, period, and ground or reason that was previously denied by the comptroller.

(3)    After receiving a timely request for a refund hearing, the comptroller may issue a written demand notice requesting that all documentation to enable the comptroller to verify the claim be produced within 180 days from the date of the demand notice. A person may not introduce into evidence at the hearing any documents that were not timely produced as requested by the demand notice. This limitation does not apply to a judicial proceeding filed in accordance with Tax Code, Chapter 112. The ability of the comptroller to demand documentation once a claim for a refund hearing is requested does not eliminate the requirement that persons provide documentation under subsection (a)(4)(E) of this section when the refund is first claimed.

34 Tex. Admin. Code § 3.325(a)(4), (b)(10), (e). Ryan challenged the requirements to provide nine categories of transactional detail in subsection (a)(4)(C) and supporting documentation in subsection (a)(4)(E) at the time the claim is initially filed. *See id*. § 3.325(a)(4)(C), (E). Ryan also challenged the effect of these requirements on the tolling provision in subsection (b)(10) and a taxpayer's ability to introduce evidence at an administrative hearing in subsection (e)(3). *See id*. § 3.325(b)(10), (e)(3). As to the 2011 rule, Ryan amended its complaint to include a challenge to the supporting documentation requirement in subsection (a)(4)(C). *See* 36 Tex. Reg. 4570.

The case was tried to the bench in May 2013. Much of the testimony during trial concerned Ryan's standing to bring its rule challenge. Ryan's witnesses testified about Ryan's tax service of filing and pursuing refund claims, its fee arrangements with its clients, the practical applications of the different versions of the rule, and the rule's impact on Ryan's business. The witnesses also described Ryan's concerns and its attempts to comply with the transactional detail and supporting documentation requirements in the 2011 and 2013 rules. According to Ryan, these requirements were burdensome, had harmed its business, and made certain claims "kind of impossible in most of the cases." One of Ryan's witnesses explained, "Understanding and predicting what documentation is going to be sufficient for each of those transactions is impossible at the time you file the claim." An employee for the Comptroller testified on the Comptroller's behalf about the verification process for refund claims, the Comptroller's need for the requested information, and the Comptroller's retroactive application of the 2013 rule.

On May 10, 2013, the trial court rendered judgment that:

6

1. The version of 34 Tex. Admin. Code § 3.325(a)(4) in effect during the period July 19, 2011 through January 6, 2013, imposes additional burdens, conditions, and restrictions on sales and use tax refund claims in excess of the specific provisions of Texas Tax Code § 111.104, and is therefore invalid and illegal.

2. The version of 34 Tex. Admin. Code § 3.325(a)(4), (b)(10), and (e) in effect beginning January 7, 2013, and currently in effect, imposes additional burdens, conditions, and restrictions on sales and use tax refund claims in excess of the specific provisions of Texas Tax Code § 111.104, and is therefore invalid and illegal.

The trial court also entered findings of fact and conclusions of law. This appeal followed.

## ANALYSIS

The Comptroller raises three issues on appeal, contending that: (i) the trial court did not have subject matter jurisdiction over Ryan's claims, (ii) the legislature unambiguously authorized rule 3.325, and (iii) rule 3.325 reasonably construed any ambiguity in the Tax Code.

**Did the trial court have jurisdiction over Ryan's claims?**

In his first issue, the Comptroller raises three jurisdictional arguments. He contends that the trial court did not have subject matter jurisdiction over Ryan's claims because Ryan failed to prove its standing, sovereign immunity bars Ryan's claims, and Ryan's challenge to the 2011 rule was moot. The Comptroller's jurisdictional arguments are questions of law which we review de novo. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

7

*Standing*

The Comptroller contends that Ryan failed to prove a cognizable injury. "For standing, a plaintiff must be personally aggrieved; his alleged injury must be concrete and particularized, actual or imminent, not hypothetical." *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008); *see also Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154 (Tex. 2012) (noting that standing doctrine in Texas requires "concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court"). If a plaintiff lacks standing to assert his claims, the court lacks jurisdiction and must dismiss the claims. *Heckman*, 369 S.W.3d at 150–51; *see Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850 (Tex. 2000) (noting that standing is component of subject matter jurisdiction).

The Comptroller urges that there was no evidence that Ryan had filed claims in its own name that were affected by the rule and that Ryan's only injury that was supported by evidence was that the rule could adversely affect Ryan's "contingent-fee arrangements." According to the Comptroller, injury based on this type of arrangement is insufficient as a matter of law to confer standing. Ryan's pleadings, however, track the language of section 2001.038 of the APA, and evidence at trial was sufficient to support the trial court's conclusions that "the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair a legal right or privilege of [Ryan]."[3] *See* Tex. Gov't Code § 2001.038 (authorizing "declaratory judgment if it is alleged that

_____

[3] The trial court's conclusions of law included:

7.     Plaintiff, as a permitted taxpayer, has a right to file and pursue Texas sales and use tax refund claims for overpayments of Texas sales and use tax.

8

the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff"); *Finance Comm'n v. Norwood*, 418 S.W.3d 566, 582 n.83 (Tex. 2013) (noting that pleadings tracking section 2001.038 language were sufficient and that APA "does not purport to set a higher standard than that set by the general doctrine of standing").

Ryan presented evidence that it is a taxpayer, taxpayer representative, and assignee with the legal right pursuant to the Tax Code to file refund claims in its own name and as an assignee of its clients' claims. *See* Tex. Tax Code § 111.104(b) (authorizing person or person's assignee to file tax refund claim); *see also* 34 Tex. Admin. Code § 1.4 (Comptroller of Pub. Accounts, Representation and Presentation) (authorizing representative for taxpayer). According to Ryan's witnesses, Ryan holds a sales and use tax permit and files "hundreds of claims each year" worth "tens of millions of dollars." Ryan's typical "contingent fee agreement" with its clients "includes an assignment of a portion of the proceeds from the refund claim to [Ryan] as [its] fees." Its clients

8.    Plaintiff has a right to file and pursue a Texas sales and use tax refund claim as an assignee of another taxpayer's Texas sales and use tax refund claim.

9.    The 2011 Rule and 2013 Rule interferes with and/or impairs Plaintiff's privilege to earn income from filing and pursuing Texas sales and use tax refund claims on behalf of its clients.

10.   The 2011 Rule and 2013 Rule interferes with or impairs Plaintiff's right as a permitted taxpayer, to file and pursue Texas sales and use tax refund claims for overpayments of Texas sales and use tax.

11.   The 2011 Rule and 2013 Rule interferes with or impairs Plaintiff's right, as an assignee of another taxpayer's Texas sales and use tax refund claim, to file and pursue Texas sales and use tax refund claims.

9

also sign powers of attorney to authorize Ryan to file and pursue refund claims. Therefore, Ryan invests its own resources to pursue refund claims. Based on our review of the evidence, we agree with the trial court that Ryan established the requisite injury to bring its rule challenge.[4] *See* Tex. Gov't Code § 2001.038; *Norwood*, 418 S.W.3d at 582 n.83; *Stop the Ordinances Please v. City of New Braunfels,* 306 S.W.3d 919, 928 (Tex. App.—Austin 2010, no pet.) (concluding plaintiffs "demonstrated the required actual, concrete, and particularized infringement of their legally protected interests necessary for standing" and collecting cases in which court found that providers of goods and services had standing to challenge government regulations that harmed business opportunities, market, and customers).

The Comptroller also urges that Ryan lacked standing because it failed to show that a favorable judicial decision would redress its alleged injury. "The third element of standing requires that the plaintiff's alleged injury be 'likely to be redressed by the requested relief.'" *Heckman*,

---

[4] The trial court's findings of fact included:

38. The requirements added by the 2011 and 2013 Rules on refund claims impose considerable burden and expense on Plaintiff in filing claims. These burdensome requirements are stated in § 3.325(a)(4) of the 2011 Rule and § 3.325(a)(4), (b)(10), and (e) of the 2013 Rule.

. . .

40. The 2011 and 2013 Rules interfere with and impair Plaintiff's ability to market to, and represent, taxpayers with refund claims; increase the costs associated with conducting Plaintiff's tax consulting business; and threaten Plaintiff's ability to conduct its business and reduces the profitability of the business.

41. These very harmful impacts of the 2011 and 2013 Rules on Plaintiff were described in detail in the testimony of the witnesses called by Plaintiff.

369 S.W.3d at 155 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). "To satisfy redressability, the plaintiff need not prove to a mathematical certainty that the requested relief will remedy his injury—he must simply establish a 'substantial likelihood that the requested relief will remedy the alleged injury in fact.'" *Id*. at 155–56 (quoting *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000)).

The Comptroller urges that, even if Ryan successfully challenges the rule, its alleged injury will not be redressed because Ryan did not challenge the transactional detail provision that has existed in the rule since 2001. *See* 26 Tex. Reg. 1115, 1116 (proposed Feb. 2, 2001), *adopted* 26 Tex. Reg. 3823 (May 25, 2001). "[W]hen a court declares an agency rule invalid, the governing legal standard reverts to the last validly adopted one in effect prior to the rule's promulgation." *Texas Health & Human Servs. Comm'n v. El Paso Cnty. Hosp. Dist.*, 351 S.W.3d 460, 475–77 (Tex. App.—Austin 2011), *aff'd*, 400 S.W.3d 72 (Tex. 2013) (citing *All Saints Health Sys. v. Texas Workers' Comp. Comm'n*, 125 S.W.3d 96, 103 (Tex. App.—Austin 2003, pet. denied)). The version of rule 3.325 in existence at the time the 2011 rule was adopted, however, was repealed. *See* 36 Tex. Reg. 4570. Further, Ryan's requested relief was to return to the legal standard set forth in subsection 111.104(c) of the Tax Code. *See* Tex. Tax Code § 111.104(c). Reverting to the express requirements in the Tax Code redresses Ryan's alleged injury from the challenged transactional detail and supporting documentation requirements in the rule.[5] *See Heckman*, 369 S.W.3d at

---

[5] In any event, even if the appropriate legal standard would be the version of the rule from 2001, the Comptroller does not contend that the 2001 version had a similar supporting documentation requirement as the 2011 and 2013 rules, and evidence at trial supported a finding that prior to the adoption of the 2011 rule, the Comptroller did not refuse to file refund claims on the ground that the initial claim did not include supporting documents or transactional detail.

11

155–56. Thus, we conclude that Ryan satisfied the element of redressability to confer standing to bring its rule challenge.

### Sovereign Immunity

The Comptroller also urges that the trial court did not have jurisdiction because Ryan failed to prove that the State waived sovereign immunity. According to the Comptroller, Ryan did not allege or prove that the rule threatens any of its legal rights or privileges. *See* Tex. Gov't Code § 2001.038. Section 2001.038 of the APA, however, is a "limited waiver of sovereign immunity." *State v. BP Am. Prod. Co.*, 290 S.W.3d 345, 362–63 (Tex. App.—Austin 2009, pet. denied). Based on our review of the evidence as described above, we conclude that Ryan's claims brought under section 2001.038 are not barred by sovereign immunity. *See id.*; *see also Texas Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 903 (Tex. App.—Austin 2009, no pet.) (noting that section 2001.038 is "legislative grant of subject-matter jurisdiction, so that valid claims raised pursuant to that provision are not barred by sovereign immunity"); *Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 720 (Tex. App.—Austin 2009, no pet.) (collecting cases concluding sovereign immunity waived in context of rule challenge under the APA).

### Mootness

The Comptroller urges that the trial court does not have jurisdiction over Ryan's challenge to the 2011 rule because it is moot. According to the Comptroller, the 2011 rule can no longer harm Ryan. "The mootness doctrine dictates that courts avoid rendering advisory opinions by only deciding cases that present a 'live' controversy at the time of the decision." *Texas Health*

*Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 846 (Tex. App.—Austin 2002, pet.

denied) (citing *Camarena v. Texas Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988)). "A case

becomes moot when: (1) it appears that one seeks to obtain a judgment on some controversy, when

in reality none exists; or (2) when one seeks a judgment on some matter which, when rendered

for any reason, cannot have any practical legal effect on a then-existing controversy." *Id.*

(citations omitted).

Ryan presented evidence at trial that the Comptroller rejected and did not

acknowledge or file claims that the Comptroller concluded did not comply with the 2011 rule.[6] By

refusing to acknowledge the claims, the Comptroller precluded the limitations period from being

tolled and there was no mechanism to appeal the Comptroller's decision. *See* Tex. Tax Code

§ 111.104(c); *see also id.* § 112.151 (requiring person to file tax refund under section 111.104 and

motion for rehearing under section 111.105 before bringing suit for refund); *Combs v. Chevron, Inc.*,

319 S.W.3d 836, 844–45 (Tex. App.—Austin 2010, pet. denied) (noting that jurisdiction over tax

refund claim is contingent on filing proper refund claim under administrative procedures specified

in tax protest law).[7]

---

[6] One of Ryan's witnesses testified, "When the 2011 Rule was first implemented, we would just get stuff returned to us. There was no record of, you know, the claims being filed; it was just rejected, saying that we did not meet the requirements of a refund claim."

[7] The Comptroller did not contend otherwise. The trial court's findings of fact included:

44.     Defendant has admitted in [his] summary judgment motion that if a taxpayer fails to comply with Rule 3.325's implementation of Tax Code § 111.104(c) the taxpayer will lose its right to file a refund suit in district court. Noncompliance with rule 3.325 by the taxpayer creates an ability for the Defendant to file a plea to the jurisdiction to obtain a dismissal of the refund claim on jurisdictional grounds.

13

The Comptroller points to his "judicial admission" during trial that claims filed under the 2011 rule will be handled under the procedures of the 2013 rule and that the tolling provision of the 2013 rule "retroactively fixes any 'damages' that Ryan might have incurred" to claims filed during the time period the 2011 rule was effective.[8] Subsection (b)(10) of the 2013 rule specifies the requirements for tolling the statute of limitations and allows tolling even if a claim does not comply with the transactional detail and supporting documentation requirements in subsections (a)(4)(C) and (E). *See* 34 Tex. Admin. Code § 3.325(a)(4)(C), (E), (b)(10)(B). But, even if the Comptroller agrees to apply the procedures of the 2013 rule to 2011 claims, the Comptroller continues to contest Ryan's challenges to both the 2011 and 2013 rules and asserts that Ryan also should have challenged the 2001 version of the rule. Further, the 2013 rule does not state that it applies retroactively. On this record, we cannot conclude that the Comptroller mooted Ryan's challenge to the 2011 rule by filing his "judicial admission." *See* Tex. Gov't Code § 402.004 ("An admission, agreement, or waiver made by the attorney general in an action or suit to which the state is a party does not prejudice the rights of the state.").

---

[8] On the first day of trial, the Comptroller filed the following document, titled "Comptroller's Judicial Admission":

> Every refund claim filed since July 19, 2011 will be deemed 'perfected' with respect to statute of limitations as of the date of filing, if the claim includes the tax liability period at issue, the approximate amount of refund requested, and the legal theories justifying the refund. In other words, limitations toll for the tax liability period, approximate amount of refund requested, and legal theories justifying the refund, from the date of filing. This retroactively includes claims which the Comptroller denied and which were deemed not to toll limitations at the time. Furthermore, every such claim will be handled under the procedures of the 2013 Rule.

14

We conclude that the trial court had subject matter jurisdiction over Ryan's claims and overrule the Comptroller's first issue.

**Are the Challenged Subsections Facially Valid?**

In his second and third issues, the Comptroller contends that the trial court erred in declaring invalid and illegal subsection (a)(4) of the 2011 rule and subsections (a)(4), (b)(10), and (e) of the 2013 rule. *See* 34 Tex. Admin. Code § 3.325(a)(4), (b)(10), (e); 36 Tex. Reg. 4570 (subsection (a)(4) of 2011 rule). He urges that the legislature unambiguously authorized the rule and that, even if there is ambiguity, the rule reasonably resolves any statutory ambiguity.[9]

*Facial Validity Challenges to Agency Rules and Standard of Review*

The applicable test for a facial rule challenge, as stated by this Court, is "whether the rule is contrary to the relevant statute." *DuPont Photomasks, Inc. v. Strayhorn*, 219 S.W.3d 414, 420 (Tex. App.—Austin 2006, pet. denied) (citing *Office of Pub. Util. Counsel,* 131 S.W.3d at 321). "To establish the rule's facial invalidity, a challenger must show that the rule: (1) contravenes specific statutory language; (2) runs counter to the general objectives of the statute; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions." *Office of Pub. Util. Counsel*, 131 S.W.3d at 321; *see also Ware v. Texas Comm'n on*

---

[9] Much of the Comptroller's briefing addresses his position that Ryan files "baseless claims." Ryan's evidence concerning its business practices is relevant to the Comptroller's standing arguments but does not impact our analysis of Ryan's challenge to the facial validity of the 2011 and 2013 rules. *See Office of Pub. Util. Counsel v. Public Util. Comm'n*, 131 S.W.3d 314, 321 (Tex. App.—Austin 2004, pet. denied) (describing facially invalid rules).

*Law Enforcement*, No. 03-12-00740-CV, 2013 Tex. App. LEXIS 5983, at *4–5 (Tex. App.—Austin May 16, 2013, no pet.) (mem. op.).

Whether the challenged subsections of the 2011 and 2013 rules are facially invalid turns on construction of the rule and relevant Tax Code provisions, matters of law that we review de novo. *See Texas Mun. Power Agency v. Public Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007); *Rodriguez v. Service Lloyds Inc. Co.*, 997 S.W.2d 248, 254 (Tex. 1999) (construing agency rules in the same manner as statutes). Our primary concern in construing a statute is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). "We thus construe the text according to its plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results." *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). We consider the statutory scheme, not isolated portions. *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011); *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008).

We also are mindful that a precondition to deference to an agency's interpretation of a statute is ambiguity. *See Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013) (describing agency-deference doctrine); *Combs v. Health Care Servs.*, 401 S.W.3d 623, 629–30 (Tex. 2013) (same). Further, "[t]axing statutes are construed strictly against the taxing authority and liberally for the taxpayer." *See Morris v. Houston Indep. Sch. Dist.*, 388 S.W.3d 310, 313 (Tex. 2012). Guided by these standards, we turn to our review of the challenged subsections.

*Subsection (a)(4)*

In its judgment, the trial court declared subsection (a)(4) of the 2011 and 2013 rules invalid and illegal because the subsection, as adopted and as amended, imposed "additional burdens, conditions, and restrictions on sales and use refund claims in excess of the provisions of Texas Tax Code § 111.104." *See* Tex. Tax Code § 111.104; 34 Tex. Admin. Code § 3.325(a)(4); 36 Tex. Reg. 4570; *Office of Pub. Util. Counsel*, 131 S.W.3d at 321.

As a threshold matter, the Comptroller, among his arguments, urges that the trial court granted broader relief than requested by Ryan and that portions of subsection (a)(4), both as adopted and as amended, are not invalid because they track statutory language. We agree with the Comptroller on this point. Ryan's challenges to subsection (a)(4), both as adopted and amended, were limited to the nine categories of transactional detail and supporting documentation required to be filed at the initiation of a refund claim. Those requirements are found in subsection (a)(4)(A) and (C) of the 2011 rule and subsection (a)(4)(C) and (E) of the 2013 rule. Ryan did not challenge subsection (a)(4)(B) or other provisions in subsection (a)(4)(A) of the 2011 rule or subsections (a)(4)(A), (B), or (D) of the 2013 rule, provisions that track or follow from statutory language in section 111.104 of the Tax Code. *See* Tex. Tax Code § 111.104(c).

As to the 2013 rule, subsection (a)(4)(A), requiring the claim to be submitted in writing and state "fully and in detail each reason or ground on which the claim is founded," mirrors the statutory language in subsections 111.104(c)(1) and (2) of the Tax Code. *Id*. § 111.104(c)(1), (2); 34 Tex. Admin. Code § 3.325(a)(4)(A); *see also* Tex. Tax Code § 111.002(a) (authorizing Comptroller to "adopt rules that do not conflict with the laws of this state or the constitution of this

17

state or the United States for the enforcement of the provisions of this title and the collection of taxes and other revenues under this title"). Subsection (a)(4)(B) of the 2013 rule, requiring the identification of the period during which the claimed overpayment was made, and subsection (a)(4)(D), requiring the claim to be submitted within the applicable limitations period, follow from the statutory language in subsection 111.104(c)(3) of the Tax Code. Tex. Tax Code § 111.104(c)(3); 34 Tex. Admin. Code § 3.325(a)(4)(B), (D). Subsection 111.104(c)(3) requires a claim to be filed before the applicable limitations period expires. Tex. Tax Code § 111.104(c)(3).

Similarly, subsection (a)(4)(A) of the 2011 rule required the claim to be submitted in writing, identify the period during which the claimed overpayment was made, and state "fully and in detail the specific grounds" upon which the claim is based, and subsection (a)(4)(B) of the 2011 rule required the claim to be submitted within the applicable limitations period. Given that these provisions in subsection (a)(4), both as adopted and amended, were not challenged by Ryan and mirror or follow from the statutory language in subsection 111.104(c) of the Tax Code, we conclude that the trial court erred by declaring them illegal and invalid. *See Office of Pub. Util. Counsel*, 131 S.W.3d at 321. On this basis, we sustain the Comptroller's second issue in part.

Ryan also does not dispute that the nine categories of transactional detail required in subsections (a)(4)(A) of the 2011 rule and (a)(4)(C) of the 2013 rule and supporting documentation required in subsections (a)(4)(C) of the 2011 rule and (a)(4)(E) of the 2013 rule must be produced during the administrative process in order for a claimant to be entitled to a refund. The crux of the parties' dispute then is *when* the transactional detail and supporting documentation must be submitted to the Comptroller to support a refund claim. In this context, we address the

18

Comptroller's arguments that the legislature unambiguously authorized the Comptroller to require

the transactional detail and supporting documentation at the initiation of a refund claim and that,

even if there is ambiguity, these requirements reasonably resolve any statutory ambiguity.

A starting point for the analysis is the supreme court's guidance in *Fleming Foods*

*of Texas, Inc. v. Rylander*, 6 S.W.3d 278 (Tex. 1999). In that case, the supreme court considered a

prior version of rule 3.325. *Id*. at 281. The court relied on the plain language of sections 111.104

and 111.107 of the Tax Code to conclude that it would not defer to the Comptroller's interpretation

of those statutes and that rule 3.325 conflicted with the plain language of section 111.104. *Id*. at 282.

Similarly, the parties' dispute here primarily turns on our interpretation of subsection 111.104(c)(2)

of the Tax Code. *See* Tex. Tax Code § 111.104(c)(2). Subsection 111.104(c)(2) requires a claim

for a refund to "state fully and in detail each reason or ground on which the claim is founded." *Id*.[10]

Guided by the supreme court's analysis in *Fleming Foods*, we similarly conclude that subsection

111.104(c)(2) is not ambiguous and, thus, we do not defer to the Comptroller's interpretation of this

subsection. *See Fleming Foods*, 6 S.W.3d at 282; *see also Roark Amusement & Vending*,

422 S.W.3d at 635; *Health Care Servs*., 401 S.W.3d at 629–30. On this basis, we overrule the

Comptroller's third issue.

To support his position that the legislature authorized the transactional detail and

supporting documentation requirements in the 2011 and 2013 rules, the Comptroller focuses on the

---

[10] As previously stated, subsection 111.104(c) of the Tax Code also requires that the claim "be written" and "be filed before the expiration of the applicable limitation period as provided by this code or before the expiration of six months after a jeopardy or deficiency determination becomes final, whichever period expires later." Tex. Tax Code § 111.104(c)(1), (3).

plain meaning of "fully" and "in detail," words that were added to subsection 111.104(c) in 2003. *See* Tex. Tax Code § 111.104(c)(2); Act of May 29, 2003, 78th Leg., R.S., ch. 1310, § 86, 2003 Tex. Gen. Laws 4748, 4782; *Webster's Third New Int'l Dictionary* 919 (2002) (defining "fully" to mean, among others, "completely," "entirely," "thoroughly"), 616 (defining "detail" to mean, among others, "extended treatment of or attention to particular items"). But, as previously stated, subsection (a)(4)(A) of the 2011 and 2013 rules already mirrors this statutory language. The Comptroller's interpretation would render this language in both versions of the rule "as mere surplusage." *See In re Caballero*, 272 S.W.3d 595, 599 (Tex. 2008) (noting that courts "give effect to all [of a rule's] words and, if possible, do not treat any [ ] language as mere surplusage" (quoting *State v. Shumake*, 199 S.W.3d 279, 287 (Tex. 2006)). Further, in subsection (b)(10)(B) of the 2013 rule, the Comptroller expressly refers to the transactional detail and supporting documentation requirements in subsections (a)(4)(C) and (E) as "other requirements under subsection (a)(4) of this section," when it refers to them, recognizing that they are distinct from the subsection (a)(4)(A) requirements that mirror subsections 111.104(c)(1) and (2) of the Tax Code. *See* Tex. Tax Code § 111.104(c)(1), (2); 34 Tex. Admin. Code § 3.325(a)(4), (b)(10)(B).

We interpret the phrase "fully and in detail" in subsection 111.104(c)(2) in context. The phrase specifically refers to "each reason or ground on which the claim is founded." *See* Tex. Tax Code § 111.104(c)(2); *Webster's* at 1891 (defining "reason" to mean, among others, "an expression or statement offered or an explanation of a belief or assertion or as a justification of an act or procedure"), 1002 (defining "ground" to mean, among others, "foundation or basis on which knowledge, belief, or conviction rests"). The plain language of the requirements of subsection (c)(2)

20

are satisfied when the ground—the legal foundation or basis—of the claim is stated "fully and in detail." *See* Tex. Tax Code § 111.104(c)(2).

We also interpret the phrase "reason or ground" in conjunction with other sections of the Tax Code that contain similar language. *See id.* §§ 111.105(d) (referring to "specific ground of error"), 111.107(b) (referring to "ground or reason"), 112.051(b) (referring to "each reason"), 112.152(a) (referring to "grounds of error"); *Scott*, 309 S.W.3d at 930–31 & n.3 (noting that generally use of substantially same phrases in statutes on same subject matter will have same meaning); *Anderson-Clayton Bros. Funeral Home, Inc. v. Strayhorn*, 149 S.W.3d 166, 173–74 (Tex. App.—Austin 2004, pet. denied) (noting that "'when the same or a similar term is used in the same connection in different statutes, the term will be given the same meaning in one as in the other, unless there is something to indicate that a different meaning was intended'" (quoting *Guthery v. Taylor*, 112 S.W.3d 715, 722 (Tex. App.—Houston [14th Dist.] 2003, no pet.))).

Section 112.051 of the Tax Code, addressing suits after protest payments, states: "The protest must be in writing and must state fully and in detail each reason for recovering the payment." Tex. Tax Code § 112.051(b). This Court has interpreted this sentence, which similarly includes the phrase "fully and in detail" in reference to "reason," to mean that the "reason" must be stated in such a way as to put the comptroller on notice of the legal basis of the claim. *See Local Neon Co. v. Strayhorn*, No. 03-04-00261-CV, 2005 Tex. App. LEXIS 4667, at *13–15 (Tex. App.—Austin June 16, 2005, no pet.) (mem. op.) (discussing protest letter and what was required "to state fully and in detail each reason"); *see also In re Nestle, USA, Inc.*, 359 S.W.3d 207, 208–09

21

(Tex. 2012) (generally discussing requirements of protest letter); *H.K. Global v. Combs*, 429 S.W.3d 132, 136 (Tex. App.—Austin 2014, pet. denied) (concluding protest letter sufficient).

The Comptroller urges that the phrase "fully and in detail" has different meanings in subsections 111.104(c)(2) and 112.051(b) of the Tax Code because refund suits under chapter 111 serve different purposes from protest suits under chapter 112. *See Strayhorn v. Lexington Ins. Co.*, 128 S.W.3d 772, 779 (Tex. App.—Austin 2004), *aff'd*, 209 S.W.3d 83 (Tex. 2006) (noting that "tax code provides two distinct types of suits, with different procedural requirements: protest suits and refund suits"). But other sections of chapter 111 also support an interpretation of subsection 111.104(c) that does not entail requiring a claimant to submit the nine categories of transactional detail and supporting documentation when initially filing its refund claim.

For example, section 111.107 of the Tax Code addresses when a refund claim is permitted, and subsection (b) provides that "[a] person may not refile a refund claim for the same transaction or item, tax type, period, and ground or reason that was previously denied by the comptroller." Tex. Tax Code § 111.107. This subsection lists "transaction or item" separately from "ground or reason," recognizing that they are not synonymous. *See id.* § 111.107(b); *see also* 34 Tex. Admin. Code § 3.325(e)(2) (tracking language of subsection 111.107(b)). Had the legislature intended the nine categories of transactional detail and the supporting documentation to be filed when the refund claim initially is filed under subsection 111.104(c), it could have included language referring to the "transaction or item" as well as the "reason or ground" as it did in subsection 111.107(b). *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) ("Only when it is necessary to give effect to the clear legislative intent can we insert additional words

22

or requirements into a statutory provision."); *City of Rockwall*, 246 S.W.3d at 631 (declining to read additional words into statute in construing statute).

Other provisions of the Tax Code that reference "ground(s)" are subsections 111.105(d) and 112.152(a). Tex. Tax Code §§ 111.105(d), 112.152(a). Subsection 111.105(d) requires the motion for rehearing to "assert each specific ground of error," and subsection 112.152(a) limits the issues that may be raised in suits for tax refunds to the "grounds of error contained in the motion for rehearing." This Court has interpreted these phrases to require a sufficient description of the legal foundation of the claims. *See Sharp v. International Bus. Machs. Corp.*, 927 S.W.2d 790, 794 (Tex. App.—Austin 1996, writ denied) (noting that section 112.152 is satisfied if motion for rehearing is sufficiently definite to identify grounds for refund); *Lawrence Indus., Inc. v. Sharp*, 890 S.W.2d 886, 893 (Tex. App.—Austin 1994, writ denied) (holding that language used was "sufficient to alert the Comptroller to the subject matter of the protest as required by the Tax Code").

Section 112.151 of the Tax Code also refers to sections 111.104 and 111.105 as prerequisites for bringing a suit for refund. *See* Tex. Tax Code § 112.151. The statutory scheme, from the filing of a refund claim to a suit for refund, is designed so that the Comptroller is aware of the legal basis for the refund claim but then gives the taxpayer a period of time to prove its claim. As acknowledged by Ryan, the transactional detail and supporting documentation will be required to prove a refund claim during the administrative process, but the rules' requirement that this information be filed at the initiation of a refund claim is unjustified by the wording of the statute and inconsistent with the overall statutory scheme. *See Texas Citizens*, 336 S.W.3d at 628 (reviewing statutory scheme to interpret term).

The 2011 and 2013 rules' supporting documentation requirement also directly conflicts with the statutory limitation in subsection 111.105(e) of the Tax Code concerning the time period in which the Comptroller is authorized to request evidence to support a claim for refund. *See* Tex. Tax Code § 111.105(e); 34 Tex. Admin. Code § 3.325(a)(4)(E); 36 Tex. Reg. 4570 (subsection (a)(4)(C) of 2011 rule). Subsection 111.105(e) provides:

> During the administrative hearing process, a person claiming a refund under Section 111.104 must submit documentation to enable the comptroller to verify the claim for refund. The comptroller may issue a notice of demand that all evidence to support the claim for refund must be produced before the expiration of a specified date in the notice. The specified date in the notice may not be earlier than 180 days after the date the refund is claimed. The comptroller may not consider evidence produced after the specified date in the notice in an administrative hearing. The limitation provided by this subsection does not apply to a judicial proceeding filed in accordance with Chapter 112.

Tex. Tax Code § 111.105(e); *see also* 34 Tex. Admin. Code § 3.325(e)(3) (tracking language of subsection 111.105(e)). The statutory time period in which the Comptroller is authorized to demand documentation supporting the refund claim—not before "180 days after the date the refund is claimed"—directly conflicts with the rules' requirement to file the supporting documentation with

24

the initial refund claim.[11] *See* 34 Tex. Admin. Code 3.325(a)(4)(E); 36 Tex. Reg. 4570 (subsection (a)(4)(C) of 2011 rule).

Requiring the nine categories of transactional detail and supporting documents at the outset is also inconsistent with subsection 111.0041(c) of the Tax Code, which requires a taxpayer to keep and produce records and supporting documentation. It provides:

> A taxpayer shall produce contemporaneous records and supporting documentation appropriate to the tax or fee for the transactions in question to substantiate and enable verification of the taxpayer's claim related to the amount of tax, penalty, or interest to be assessed, collected, or refunded in an administrative or judicial proceeding. Contemporaneous records and supporting documentation appropriate to the tax or fee may include, for example, invoices, vouchers, checks, shipping records, contracts, or other equivalent records, such as electronically stored images of such documents, reflecting legal relationships and taxes collected or paid.

---

[11] The trial court recognized the time distinction in its findings of fact:

42.     An important distinction exists between requiring that information and documents be provided with an initial refund claim filing and requiring that the information be submitted after the claim has been filed. The later requirement creates large additional and unique burdens on Plaintiff, as described in detail by the witnesses called by Plaintiff.

Ryan's witnesses testified about the practicalities of gathering the information to support a refund claim. Testimony supported findings that it was not always practical or possible to provide information when a refund claim was filed because, for example, it was not always possible to know in advance what documents would ultimately be required to prove a claim.

25

Tex. Tax Code § 111.0041(c).[12] The plain language of this subsection sets out the taxpayer's time period to prove its claim "for the transactions in question" as being during the administrative or judicial process, not at the outset of filing, and expressly allows flexibility as to the appropriate proof to support a given transaction. *See id.*; *see also id.* §§ 111.105(e), 112.151(f) (referring to requirement in section 111.0041 to "produce contemporaneous records and supporting documentation appropriate to the tax or fee for the transactions in question").

In contrast, the requirements of nine categories of transactional detail and supporting documentation set out the minimum that must be produced at the time the initial tax refund claim is made with no margin for error.[13] *See Chevron*, 319 S.W.3d at 844–45 (requiring party to follow jurisdictional prerequisites to suit in sections 111.104 and 111.105 of Tax Code). If the tax refund claim is administratively denied, the failure to file the supporting documentation and transactional detail at the initiation of a claim sets up a jurisdictional barrier to bringing suit against the Comptroller, even if the Comptroller was aware of the legal basis for the refund claim from the

---

[12] The Comptroller relies on the phrase in the title to this section, "Burden to Produce and Substantiate Claims," as evidence of legislative intent to authorize the supporting documentation requirement in the 2011 and 2013 rules. *See* Tex. Tax Code § 111.0041. But placing the burden on the taxpayer to prove its claims does not equate with the rules' requirement that the taxpayer file all-inclusive proof at the initiation of a claim.

[13] The Comptroller contends that the 2013 rule actually stops short of what would be allowed under the Tax Code because it contains a "safety valve," the alternative of filing a certified statement instead of producing the supporting documents in subsection (a)(4)(E) in specified circumstances. *See* 34 Tex. Admin. Code § 3.325(a)(4)(E). The alternative only applies, however, if "supporting documents cannot easily be mailed or otherwise easily submitted to the agency." *Id.* The crux of Ryan's complaint concerns the practicalities and burdens of identifying and locating the necessary supporting documents for a given claim, not the act of mailing or delivering the documents.

26

outset and the appropriate transactional detail and supporting documentation could have been provided during the administrative process. *See id*.

Based on the plain language of subsection 111.104(c) of the Tax Code, we conclude that the 2011 and 2013 rules' requirements that claimants file the nine categories of transactional detail and supporting documentation at the time the refund claim is initially filed impose "additional burdens, conditions, or restrictions in excess of or inconsistent with" subsection 111.104(c) and the overall statutory scheme. *See Office of Pub. Util. Counsel*, 131 S.W.3d at 321. Thus, we conclude that the trial court did not err when it declared that the transactional detail requirements in subsections (a)(4)(A) of the 2011 rule and (a)(4)(C) of the 2013 rule were illegal and invalid and when it declared that the supporting documentation requirements in subsections (a)(4)(C) of the 2011 rule and (a)(4)(E) of the 2013 rule were illegal and invalid.

*Subsections (b)(10) and (e)*

As previously stated, the trial court also declared that subsections (b)(10) and (e) of the 2013 rule were invalid and illegal because the subsections imposed additional burdens, conditions, and restrictions on refund claims in excess of the provisions of section 111.104 of the Tax Code. *See* Tex. Tax Code § 111.104; 34 Tex. Admin. Code § 3.325(b)(10), (e); *Office of Pub. Util. Counsel*, 131 S.W.3d at 321.

As was the case with subsection (a)(4), we narrow the scope of the trial court's declarations as to subsections (b)(10) and (e) of the 2013 rule. The trial court declared these subsections entirely illegal and invalid, but certain provisions in these subsections track or follow from statutory language. Further, Ryan's challenge to the tolling provision in subsection (b)(10)

27

concerned only the consequences of the transactional detail and supporting documentation requirements in subsections (a)(4)(C) and (E) on tolling and its challenge to subsection (e) concerned a taxpayer's ability to introduce evidence at an administrative hearing.

Because we have concluded that only subsections (a)(4)(C) and (E) of the 2013 rule are illegal and invalid and that remaining provisions in subsection (a)(4) are valid, it follows that subsection (b)(10) is valid. Subsection (b)(10) specifically only refers to subsections (a)(4)(A) and (a)(4)(B) of the 2013 rule, subsections that we have concluded are valid. *See* 34 Tex. Admin. Code § 3.325(a)(4)(A), (B). Relevant to this appeal, subsection (b)(10)(A) of the 2013 rule expressly tolls the statute of limitations for claims that (i) state "fully and in detail each reason or ground on which the claim is filed, as required by subsection (a)(4)(A) of this subsection," (ii) identify the period of the claimed overpayment, "as required by subsection (a)(4)(B) of this subsection," and (iii) include with the claim a power of attorney "if a person other than the person to whom the refund is due is submitting the claim for refund." *See id*. § 3.325(b)(10)(A). Subsection (b)(10)(B) allows a refund hearing if a claim is denied that meets the requirements of subsection (b)(10)(A), and subsection (b)(10)(C) expressly states that limitations are not tolled if the requirements of subsection (b)(10)(A) are not met. *See id*. § 3.325(b)(10)(B), (C). These provisions track or follow from language in subsections 111.104(b) and (c) of the Tax Code. *See* Tex. Tax Code §§ 111.104(b) (requiring claim to be filed by person who paid tax or "person's attorney, assignee, or other successor"), (c)(2) (requiring claim to "state fully and in detail each reason or ground on which the claim is founded"), (c)(3) (requiring claim to be filed before expiration of limitations period); *see also id*. §§ 111.105(a) (authorizing hearing), .207(a)(3) (tolling limitations

28

for "period during which an administrative redetermination or refund hearing is pending before the comptroller").

It also follows that subsection (e) of the 2013 rule, addressing the denial of refund claims, is valid except as to the last sentence of subsection (e)(3). That sentence reads: "The ability of the comptroller to demand documentation once a claim for a refund hearing is requested does not eliminate the requirement that persons provide documentation under subsection (a)(4)(E) of this section when the refund is first claimed." 34 Tex. Admin. Code § 3.325(e)(3). Because the last sentence references and affirms the supporting documentation requirement in subsection (a)(4)(E), we conclude that the sentence is illegal and invalid for the reasons stated above as to subsection (a)(4)(E). The remaining provisions of subsection (e), however, track or follow from statutory language. *Compare* Tex. Tax Code §§ 111.105(a) (authorizing person to request hearing "on or before the 30th day after the date the comptroller issues a letter denying the claim for refund"), .105(e) (setting out documentation requirements during administrative process), .107(b) (prohibiting person from refiling "refund claim for the same transaction or item, tax type, period, and ground or reason that was previously denied by the comptroller"), *with* 34 Tex. Admin. Code § 3.325(e)(1) (authorizing claimant to "request refund hearing within 30 days of the denial"), (e)(2) (mirroring language from subsection 111.107(b)), (e)(3) (mirroring language from subsection 111.105(e) as to documentation requirements during administrative process).

Thus, we conclude that the trial court erred when it declared that subsections (b)(10) and (e) of the 2013 rule were illegal and invalid, except as to the last sentence in subsection (e)(3). Because we have narrowed the scope of the trial court's declarations based on the plain language of

29

the relevant statutes, we sustain the Comptroller's second issue in part and overrule it in part. *See Scott*, 309 S.W.3d at 930.

**CONCLUSION**

For these reasons, we affirm the trial court's judgment to the extent the trial court declared illegal and invalid the nine categories of transactional detail and supporting documentation requirements in subsection (a)(4)(A) and (C) of the 2011 rule and subsections (a)(4)(C) and (E) and the last sentence of subsection (e)(3) of the 2013 rule. We reverse the trial court's judgment to the extent that the trial court found other challenged provisions in the rule, as adopted in 2011 and as amended in 2013, illegal and invalid and render judgment declaring those provisions to be facially valid.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Puryear and Goodwin

Affirmed in Part; Reversed and Rendered in Part

Filed:   May 20, 2015

30